C. S. GAINER Jr. and Edna GAINER *v.*
Lorena K. TUCKER, Administratrix of the
Estate of Jim TUCKER

73-122                                   502 S.W. 2d 636

Opinion delivered December 10, 1973

*Davis, Reed & Douglas,* for appellants.

*Coffelt, Burrows & Sawyer,* for appellee.

CARLETON HARRIS, Chief Justice. Jim Tucker, a licensed real estate broker in Arkansas, instituted suit in the Benton County Circuit Court against C. S. Gainer, Jr. and Edna Gainer to enforce a $30,260 commission for the sale of 712 acres in Benton County. On April 11, 1967, an offer and acceptance contract was entered into between the buyer (Charles Seaney) obtained by Tucker, and C. S. Gainer, Jr. and Edna J. Gainer, appellants herein. The total purchase price for the property was $302,600, and the Gainers agree in the same offer and acceptance to pay Tucker $30,260 as his commission in obtaining the offer. The agreement provided that Seaney was to pay $35,000 in cash and the balance of $267,600 as follows: "$26,760 annually including 6% interest, first payment to be made twelve months from closing date of this agreement. Buyer reserves the right to pay more or all at any time and without penalty." This offer and acceptance was made an

exhibit to the complaint filed by Tucker. In the suit, it was admitted that $10,000 of the commission had been paid, leaving a balance due of $25,260. Also attached to the complaint was plaintiff's Exhibit B, a letter dated June 9, 1967 as follows:

"Mr. Jim Tucker
205 West Walnut
Rogers, Arkansas 72756

Dear Mr. Tucker:

This letter will serve to acknowledge and set forth our agreement concerning the payment of a real estate commission due you for the sale of land owned by me to Mr. Charles Seaney.

The total commission is $30,260.00, of which you have received $10,000.00, leaving a balance due of $20,260.00 which is to be paid to you in three installments of $6,753.33 each, the first installment being due June 15, 1968, and a like installment due June 15, 1969 with the final installment of $6,753.34 being due on June 15, 1970.

Yours truly,

/s/ C. S. Gainer, Jr.
C. S. Gainer, Jr.

ACCEPTED:

/s/ Jim Tucker
Jim Tucker"

Appellants answered, asserting that except for certain fraudulent representations made by Tucker, the contract would never have been entered into by and between the parties. It was alleged *inter alia* that Tucker agreed to accept his commission, percentagewise, of the monies paid to the Gainers by Seaney as those payments were made to them; further, that if the Gainers would accept the small down payment offered by Seaney, Tucker would only require the Gainers to pay to him a 6% commission due on the down payment; still further, that if the transaction was not completed, i.e., Seaney did not pay the total pur-

chase price set out previously, appellants would only owe to Tucker 6% of the monies paid to them on the purchase price. It was further alleged that Tucker received well in excess of the 6% monies due and owing him as a commission for the transaction. Appellants next asserted that Tucker guaranteed that Seaney was in substantially good financial condition, and that if payments were not made, he (Tucker) would guarantee such payments; that based upon the conditions mentioned, appellants entered into the contract. It was then asserted that Seaney became delinquent, failed and refused to make payments as they became due and that finally the property was reconveyed back to appellants by the purchaser Seaney. The prayer was that the complaint be dismissed. Subsequently, appellants filed a counter-claim, alleging an oral agreement which substantially followed the allegations set out in the answer, and asserted that Tucker had been paid $10,-000, though only due $3,980, and they sought a judgment against him for $6,020.00. Thereafter, interrogatories were propounded by the Gainers to Tucker, but the answers are not particularly pertinent to the question posed before us in this litigation. On February 18, 1972, Mr. Tucker passed away and the cause was revived in the name of his wife, Lorena K. Tucker, as Administratrix of his Estate. Subsequently, the Gainers filed a petition with the court, stating that Mr. Gainer was in very bad health making it impossible for him to attend the trial of the case which had been set for December 27, 1972; that Gainer "has virtually all the knowledge in this cause of the defendants' defenses" and it was requested that the cause be continued. The court then entered an order continuing the trial until February 16, 1973, and the order further provided:

"The defendants are to file in this cause within ten (10) days from this date an Affidavit for Continuance, and in the event the plaintiff admits that the defendants would testify to the facts in said Affidavit for Continuance by the defendants, the said cause shall be tried upon the facts presented by the plaintiff, the Affidavit of the defendants, and other testimony of the defendants on said 16th day of February, 1973.

"In the event the defendants desire to take the depositions of the defendant, C. S. Gainer, Jr., he shall give notice of the time of taking said depositions to the attorney for the plaintiff of the time and place of

said depositions to be taken within five (5) days after the filing of the Affidavit for Continuance heretofore mentioned."

Subsequently, the affidavit of Mr. Gainer was filed, pertinent portions of which read as follows:

"On the evening of April 11, 1967, Jim Tucker presented to me a form offer and acceptance dated April 11, 1967, signed by Charles Seaney, which provided that Mr. Seaney would purchase certain lands of mine located in Benton County, Arkansas, for the total sum of $302,600.00, with $35,000.00 down and the balance in installment payments. This is the same offer and acceptance a copy of which is attached to the Complaint in this case with the exception that there were no provisions thereon for realtor's fees. I assumed that there would be a reasonable realtor's fee but terms and provisions would be for future discussion. Jim Tucker presented this agreement to Mrs. Edna J. Gainer, my wife, and me for signature. We refused at first to sign because of the small down payment provided, but then did sign upon the insistence of Jim Tucker and his repeated representations that Charles Seaney was financially capable, had financial connections with banks, otherwise was well able to complete purchase and development, and that Jim Tucker himself would secure background statements on Charles Seaney which would show this."

As to the June 9 letter signed by Gainer, appellant stated:

"Mr. Tucker then prevailed upon my good nature further, and took me to the law office of Clayton Little in Bentonville, Arkansas, to sign an agreement. The letter agreement dated June 9, 1967, attached to plaintiff's complaint was signed by us. It was signed by me only after Jim Tucker stated that he agreed to accept $10,000.00 and 10% total sums received on the purchase price thereafter, but I[1] might or did need such a document for credit purposes. He knew at the time that he neither agreed to nor would pay the sums therein stated at the times therein stated with the exception of the initial $10,000.00, but mis-

---

[1]This obviously is a typographical error in the record and properly should be "he". All parties, in the abstract and brief, treat the word as "he".

led me into signing such document on the basis of our oral agreement that I would pay 10% of sums received."

Thereafter, Requests for Admissions were submitted by appellee to Mr. Gainer, in which Gainer admitted that the letter written on June 9 was signed by him. He was also asked to admit that the balance had not been paid, to which he replied, "Admitted in form but denied as a proper balance." Thereafter, appellee moved for a summary judgment, supporting the motion by the two exhibits heretofore mentioned and the answers to the Requests for Admissions. Gainer resubmitted his affidavit in support of his opposition to the motion and after submission of briefs, the court granted the summary judgment holding that there was no genuine issue as to any material fact, and specifically finding:

"7. That the purchasers and sellers entered into an Offer and Acceptance dated April 11, 1967 in which the defendants herein agreed to pay the plaintiff the sum of $30,260.00 real estate commission.

"8. That $10,000.00 of the commission was paid leaving a balance due of $20,260.00.

"9. That subsequent to the Offer and Acceptance signed on April 11, 1967, the defendant, C. S. Gainer, Jr. and the plaintiff entered into an agreement dated June 9, 1967, which acknowledged that the total commission due in the sale was $30,260.00 and provided that the balance due of $20,260.00 was to be paid in three installments of $6,753.33 each, the first installment being due on June 15, 1968 and a like installment being due June 15, 1969 with a final installment of $6,753.34 being due June 15, 1970. That this letter agreement was admitted as being signed by the defendant, C. S. Gainer, Jr. in his Answer to Request for Admissions filed in this cause. That the defendant further admitted that the balance of $20,260.00 had not been paid. ***

"12. That the court specifically finds that even assuming the facts as testified to in the affidavit to be true for the purpose of this hearing, that the testimony would be inadmissible at the trial of this cause. That

in view of the ruling in the case of *Bonds* v. *Littrell,*
247 Ark. 577, 446 S.W. 2d 672 (1969), the court finds
that the testimony would not be prohibited by the
Parole Evidence Rule. However, it is the court's
ruling that the testimony contained in the affidavit
filed in this cause would be testimony by a party
against an administratrix and would therefore be
prohibited by the 'Dead Man's Statute', Arkansas
Constitution, Schedule, Paragraph 2."

Summary judgment was accordingly entered for
appellee, and from such judgment, appellants bring this
appeal. For reversal, it is asserted that material issues of
fact existed and appellee was not entitled to judgment
as a matter of law.

Of course, summary judgment is only proper when
there is no genuine issue as to any material fact and the
moving party is entitled to judgment as a matter of law.
*Wilson, et al* v. *McDaniel, et al,* 247 Ark. 1036, 449 S.W.
2d 944. The finding of the court that Gainer admitted
the balance of $20,260 had not been paid is attacked by ap-
pellants as incorrect, it being pointed out that the answer
actually given by Gainer was "Admitted in form but
denied as to proper balance." We find no merit in this
argument for, like the trial court, we take this simply to
have reference to the same contention made by Gainer
in his affidavit, viz., that though he had signed the instru-
ment reflecting that amount of indebtedness, the oral
agreement between the parties prevented the amount from
being correct.

The principal argument advanced by appellants is
that the court erred in holding that the matters set out
by Gainer in his affidavit as a defense would be prohibited
by the "Dead Man's Statute", it being asserted that, in
using the answers to the requests for admissions, appellee
has waived the right to assert the contention of incompe-
tency under the constitutional provision. In other words,
having used to his own advantage certain statements made
by Gainer, he cannot refuse the right to Gainer to use
other portions. Cases are offered in support of this con-
tention, but we need not discuss it under our view in
this litigation.

The trial court held that parol evidence was admissible to show that the agreement was other than set out in the instrument—and this is normally true where fraud is alleged. In *Hamburg Bank* v. *Jones*, 202 Ark. 622, 151 S.W. 2d 990, we said:

> "As to the alleged violation of the parole evidence rule, appellee testified very positively that appellant's president called upon him at his office in Little Rock and secured his signature thereto by telling him that the bank would not look to him for payment, but to the collateral, consisting of preferred stock in the Jones Motor Company of Hamburg, and by writing him a letter to this effect, which letter was misplaced and not introduced. These were fraudulent misrepresentations, if made, and the jury by its verdict evidently believed they were. Were they admissible? We have many times held them to be competent where the issue of fraud in the procurement of the instrument is relied on. In *St. L., I.M. & S. Ry. Co.* v. *Hambright*, 87 Ark. 614, 113 S.W. 803, it was said: 'The rule of evidence forbidding the addition, alteration or contradiction of a written instrument by parol testimony of antecedent and contemporaneous negotiations does not apply where there is an issue of fraud in the procurement of the writing.' "

See also *Commercial Credit Company* v. *Childs*, 199 Ark. 1073, 137 S.W. 2d 260. Numerous other decisions hold likewise. However, Gainer is not in a position to assert fraud, for under his own statement, he was a participant. In the early case of *Evans* v. *Dravo*, 24 Pa. 62, the Supreme Court of Pennsylvania held that a person cannot recover where it is necessary that he establish fraud to recover and such fraud includes partly his own actions. In the case cited, Evans desired to sell property to Gilpin for $500.00 though Evans valued the lot at $2,500. However, Evans wanted to sell to Gilpin because the lot would be used as a site for a rolling-mill which Evans felt would increase the value of adjoining property which he owned. The wife of Evans was not willing to sell for that price and Evans entered into an agreement whereby Dravo and three other persons executed a note to pay Evans $2,000. This was done purely as a matter of Evans having something to show his wife to leave the impression that he was going to receive a total of $2,500, for which amount

she was willing to sell. Subsequently, Evans sued the four note-makers and their defense was that they were never supposed to pay the note, and, in their answer, alleged the fraud, but the court would not consider this evidence since they were parties to the fraud. Evans was allowed to recover, though he had acted fraudulently, because *his recovery was not dependent upon his fraud*, but rather established by the executed note that he held from defendants. The court, in explaining its logic, pointed out that one cannot be permitted to take advantage of his own wrong and that Dravo and the other note-signers were participating in a fraud on the wife. The court then said:

> "But it is insisted that the plaintiff was in *pari delicto*, and that the maxims apply to him and his action as well as to the defendant. That he was party to the fraud practised on his wife is not to be doubted, since the verdict has established it; but if he needs no assistance from the fraud to make out his case, if he have a perfect cause of action without it, it is apprehended these maxims do not apply to him. *** 'If the plaintiff cannot open his case without showing that he has broken the law, the Court will not assist him, whatever his claim in justice may be upon the defendant.' But we have seen that this plaintiff could not only open but prove his case without showing any infraction of law."

Evans thus recovered, unaffected by the fraud, though he was a party to it—unaffected, because the suit was brought on the instrument.

The reasoning of the cited case is in accord with the Restatement of Restitution, § 140 (1937), p. 562, where it is stated that "a person may be prevented from obtaining restitution for a benefit because of his criminal or other wrongful conduct in connection with the transaction on which his claim is based." It is pointed out in the comment that if equity would refuse to grant relief because of such conduct, a law court in which an action for restitution is brought, would also refuse to grant relief, since the action is equitable in nature.

Here, Gainer says that the letter he signed acknow-

ledging that the total commission to Tucker was $30,260, that $10,000 had been paid, and that $20,260 was still to be paid, was not the actual agreement at all, but was only given because Tucker needed "such a document for credit purposes." In other words, the letter, or more properly a note, was only for the purpose of enabling Tucker to enhance his credit, or perhaps borrow money from some lending institution that would thus be permitted to rely on an instrument, executed by Gainer, which was untrue and meant absolutely nothing. In our own case of *Marshall v. Marshall*, 227 Ark. 582, 300 S.W. 2d 933, Hubert Marshall contended that a deed, as to him, was actually a mortgage, but as to his creditors, was a valid deed. In determining that the instrument was a valid deed, this court said:

> "In effect, he says that the instrument was a valid deed in so far as it affected his wife and creditors but as to him it was only a mortgage. Obviously, he was agreeable to perpetrating a fraud on both his wife and outside creditors. The instrument could not be part deed and part mortgage, it was either one or the other.

> "Having concluded, as indicated, that the instrument in question was, in fact, in the circumstances a valid deed and not a mortgage, and that the 'clean hands doctrine' precludes appellee from claiming otherwise, the decree is reversed and the cause remanded for further proceedings consistent with this opinion."

Likewise, in *Anthony v. First National Bank*, 244 Ark. 1015, 431 S.W. 2d 267, Anthony contended that a certain note which he had executed, but on which he asserted protection from liability by secret agreement, constituted a fraud. This court, rejecting the argument, said:

> "Appellants also argue that replacing the overdraft of Garland Anthony Lumber Company with Garland Anthony's note on which he was protected from liability by a secret agreement constituted a fraud, bringing into play the 'clean hands' maxim in his favor. If this constituted a fraud, appellants were not the ones defrauded, and Garland Anthony was a party to

the fraud. It is also well settled that one guilty of fraud in a transaction may not invoke the maxim as that would violate the clean hands principle. *Sliman v. Moore,* 198 Ark. 734, 131 S.W. 2d 1. Even if deception of bank examiners had been the only purpose of the note in question, this was as well known to Anthony as it was to Blewster, and the 'clean hands' defense would not be available to him."

We have endeavored, from what has been said, to point out that Gainer's defense to the execution of the note is not a valid one because to establish this defense, he must at the same time establish that he committed a wrongful and inequitable act. The fraud issue was raised by Gainer—not Tucker. The latter's cause of action is not dependent upon a secret agreement that could cause injury to innocent persons. His cause is dependent simply upon the written instrument. Accordingly, conceding, without deciding, that the use of the answers to the requests for admissions by appellee waived the "Dead Man's Statute" and Gainer's affidavit should accordingly have been considered, this appellant still cannot prevail because of the reasons heretofore set out.

Finally, it is argued that no summary judgment should have been granted against Mrs. Gainer, and we agree with this contention. The affidavit of Mr. Gainer was signed only by him; likewise, Mrs. Gainer did not sign the letter (or note) of June 9, 1967 admitting the indebtedness to Tucker. In addition, the Requests for Admissions were only directed to Mr. Gainer, and Mrs. Gainer admitted nothing. Appellee devotes very little time to this point in his brief, stating only that Mrs. Gainer had executed the original Offer and Acceptance of April 11, 1967[2] and further:

"While it is admitted that Edna J. Gainer did not sign the letter agreement of June 9, 1967, it is apparent from his affidavit that Mr. Gainer handled all of the dealings for his wife in this transaction and acted

---

[2]According to Gainer's affidavit, although both Gainer and his wife signed the original agreement on April 11, the figure of the realtor's fee was not inserted into that document until June 9, when Gainer also signed the letter acknowledging his indebtedness.

accordingly as her agent throughout the entire transaction."

Of course, Mrs. Gainer is not bound by the affidavit of Mr. Gainer, and there is nothing in the record from Mrs. Gainer to establish that her husband acted as her agent; as stated, there is no admission by appellant Edna Gainer that she executed any paper or document. The proof, as to her, was insufficient upon which to grant a summary judgment.

In accordance with what has been said, the judgment is affirmed as to Mr. Gainer, reversed as to Mrs. Gainer, and remanded to the Benton County Circuit Court with directions to proceed in a manner not inconsistent with this opinion.