John D. TONEY, Sr. *v.* John T. HASKINS et al

CA 82-166                                     644 S.W.2d 622

Court of Appeals of Arkansas
Opinion delivered January 12, 1983
[Rehearing denied February 9, 1983.]

*Hoover, Jacobs & Storey,* by: *O. H. Storey, III,* for appellant.

*Cearley, Mitchell & Roachell,* for appellees.

GEORGE K. CRACRAFT, Judge. This is the second appeal in this case. The action was first commenced by John T. Haskins in the Circuit Court of Pulaski County as an action for damages based on breach of fiduciary duty and fraud and deceit. Numerous pleadings raising both legal and equitable issues were subsequently filed. On the first appeal the action of the trial court in dismissing an equitable counterclaim was reversed and the cause remanded with directions to transfer the matter to equity. *Toney* v. *Haskins,* 271 Ark. 190, 608 S.W.2d 28 (Ark. App. 1980). In its opinion the Court of Appeals most succinctly referred to that record as a "procedural morass yielding an issue easier to decide than to describe."

Upon transfer of the case pursuant to the mandate, both parties filed "amended and substituted pleadings." In his substituted complaint, Haskins alleged that Toney, while acting as his agent and in a fiduciary capacity had gained secret profits amounting to $66,193.51 in the real estate transaction. He prayed for damages in that amount and for punitive damages for breach of fiduciary duty and fraud and deceit practiced upon him. A part of the secret profit consisted of a note and mortgage executed by Haskins to Toney. The substituted complaint also asked that the note and mortgage be declared null and void. Toney denied the allegations of the complaint and counterclaimed for judgment on the note and for foreclosure on the mortgage securing it. This pleading also brought in other parties claiming under Haskins, asking that their interests also be foreclosed. These other parties are not involved in this appeal.

Both Haskins and Toney had wide experience in real estate transactions. Haskins, a successful attorney, had also been successful in buying, selling and investing in real estate. Toney was a real estate broker of many years' experience and was a member of the County Planning Commission at the time of the transactions involved in this suit. Both testified to the numerous real estate transactions in which each had participated as buyer, seller or developer. The transaction now in issue was the first one in which these parties had dealt with each other. Both were acquainted with Roger Mears, a former county judge, subsequently indicted for illegal transactions by a public official. The charges against Mears included the illegal taking of payments or profits derived form the location of county roads. Toney had originally been indicted along with Mears for his participation in these transactions but was granted immunity in exchange for his testimony against Mears.

## HASKINS' TESTIMONY

According to Haskins he was first approached around May 1, 1977 by Toney, who sought to interest him in the purchase of 80 acres of land located near Sardis Road, and who represented that a county road would be put through it and its value substantially enhanced. Toney described it to him as a "sleeper and a good investment." They discussed the asking price and Toney indicated that the owners wanted $3,500 per acre, but he thought it could be bought for $3,000. Haskins asked Toney to pursue it. Toney compiled a list of comparable sales and other data reflecting value and later took Haskins to the area for an inspection of the property and surrounding area.

During these discussions they talked about the proposed road. Toney suggested that if the road was dedicated through the land the county would construct it because of a desire to connect Heinkie and Sardis roads. Haskins then called Mears and learned that the county did intend to construct a road through the property. For the next few days Haskins considered the proposition and reinspected the area. He concluded that the lands were in fact worth $3,000 per acre.

He again met with Toney at which time they further discussed the prospect of the county road. Toney suggested to him that in view of his position with the County Planning Commission it would be better if title was taken in his name as trustee to enable Toney to make the dedication and get the "legwork" done. Haskins knew of his position on that commission and thought it a good suggestion.

On June 13th the parties executed an offer and acceptance in which Toney appeared as "seller" and Haskins as "buyer." In the space provided for the name of the real estate agents they typed the word "none." The agreed price in the contract was $3,000 per acre and was conditioned upon Haskins' obtaining proper financing. Haskins was not able to obtain financing and asked Toney as his broker to see if "they would take less." Several days later Toney advised him that "they would take" $2,800 per acre and if Haskins desired 100% financing that Toney himself would take a second mortgage for $24,000.

On July 5th Toney brought to Haskins an amended offer and acceptance which provided that title would pass through Toney, who would execute the road dedication. Haskins was to furnish $200,000 on the date of closing and execute a note to Toney for $24,000 to be secured by a second mortgage. The addendum recited that Toney was buying from Weinstein (another broker representing the owners) and that Toney would participate in Weinstein's commission only. In this addendum Toney agreed to furnish title insurance.

Haskins testified that on May 20, 1977, during the period he was purportedly negotiating with the owners on his behalf, Toney entered into an offer and acceptance with the owners in his *own* behalf to purchase the tract "as trustee" at a price of only $2,000 per acre, a fact which was not disclosed to Haskins at the time the original offer and acceptance or the addendum obligating Haskins to pay $2,800 per acre was entered into. He testified that at all times Toney was acting as his broker and was negotiating in his behalf.

The transactions between Toney and the owners and between Toney and Haskins were closed simultaneously. The owners transferred title to Toney as trustee for $2,000 an acre. Toney executed the road dedication deed and then deeded the property to Haskins for $2,800 per acre. Haskins delivered the $200,000 cash consideration but was not present at the closing. The note for $24,000 and the mortgage were sent to Haskins, executed and returned for recording with the deed. Toney paid the owners the agreed $160,000 consideration from the $200,000 provided by Haskins. Without use of any of his funds, Toney thereby realized a profit of $64,000 in the transaction plus his portion of the owners' broker's commission amounting to $6,400. Haskins testified that at all times Toney was acting as his agent and that title was taken by agreement in Toney's name as trustee merely for the purpose of the road easement. Haskins testified positively that he did not learn until a year later that during the period of their negotiations Toney actually had an agreement to purchase the lands for $2,000 an acre or that Toney had made the secret profit by his betrayal of trust and the use of Haskins' money.

## TONEY'S TESTIMONY

Toney testified that prior to his first dealings with Haskins he had already entered into an offer and acceptance with the owners to purchase the lands for $2,000 per acre. He stated that he entered into the transactin with Haskins as the seller and not as the agent and that he had no agreements with Haskins not contained in the written agreement and addendum. He specifically denied taking title in himself for the purpose stated by Haskins. He denied ever concealing from Haskins the purchase price he was to pay the owners and asserted that he told him he was making a profit of $800 per acre on the transaction when the addendum was signed.

## THE GRAND JURY TRANSCRIPT

Haskins offered into evidence a transcript of Toney's testimony, given under the order of immunity, before the grand jury which was investigating Mears. In that investigation Toney had testified to several transactions in which he

and Mears had divided profits derived from transactions in which the value of real estate had been enhanced by location of county roads by Mears. The general import of that testimony was that Mears never appeared in the transactions and that the two of them often dealt through "straw men" who were also paid from the profits. The trial court excluded the testimony dealing with other transactions as being irrelevant. It did admit the grand jury testimony that dealt with the specific transaction involved here. The clear import of this testimony was that Haskins was a knowing participant in this scheme to profit by the location of a county road and that the fact that any profit realized by Toney would be shared with Mears was known and agreed to by Haskins from the very beginning. Haskins in his testimony at trial denied these allegations.

The chancellor found Toney's version of the transaction to be "not believable" and that, despite "oddities" in Haskins' evidence, it was the more believeable. The chancellor granted Haskins' prayer to cancel the note and mortgage and awarded him a judgment for all of the secret profit obtained by Toney. No prejudgment interest was awarded. Toney's cross-complaint was dismissed. The appellant Toney contends that the trial court's ruling was violative of the parol evidence rule and was not supported by the evidence. Appellee, on cross-appeal, contends that the chancellor erred in ruling portions of Toney's grand jury testimony inadmissible, for failing to allow appellee to recover the real estate commission paid by Weinstein to Toney, and in refusing to award prejudgment interest and punitive damages.

## THE APPEAL

Toney's appeal is based on the contention that the chancellor erred in finding that the relationship of principal and agent existed between the parties. Haskins' testimony, if believed and admissible, would clearly establish both the relationship and that the agent had gained a secret profit by a breach of his duty to the principal.

The evidence before the trial court as to the relationship of the parties was in direct conflict. From our examination

of the exhaustive analysis of the evidence contained in the chancellor's written memorandum it is obvious that his decision turned primarily on credibilty. It is well settled that the findings of the chancellor will not be disturbed on appeal unless found to be clearly against the preponderance of the evidence and as preponderance turns heavily on questions of credibility we defer to the superior position of the trial court in that regard. Rule 52 (a). Ark. Rules of Civil Procedure; *Andres* v. *Andres,* 1 Ark. App. 75, 613 S.W.2d 404 (1981). As the trial court found Haskins' testimony as to the relationship to be more credible, that finding will not be disturbed, unless, as appellant argues, that testimony was violative of the parol evidence rule.

Toney contends that Haskins' testimony to establish that relationship was violative of the parol evidence rule. He argues that as the lines in the written offer and acceptance designated for identification of the real estate agent involved in the transaction bore the notation "none," the evidence tending to show otherwise was incompetent under the well settled rule that where a written contract is plain, unambiguous and complete in its terms, parol evidence is not admissible to contradict or add to the contract. We agree that this is a proper statement of the parol evidence rule. *Brown* v. *Aquilino,* 271 Ark. 273, 608 S.W.2d 35 (Ark. App. 1980). We do not agree that the rule is applicable here.

Haskins alleged in his complaint that he had been induced to sign the contract by fraud and deceit. The testimony objected to would tend to show that Toney represented to Haskins that he was negotiating as Haskins' agent with the owners for a price of $3,000 when, in fact, he had already obtained in his own right a contract to purchase the property for substantially less. It would tend to show that at a subsequent date he again represented to Haskins that he had negotiated on his behalf and obtained a reduction of $200 an acre for the tract at a time while his personal contract for the lesser sum was still in force and effect and that he never disclosed these facts to Haskins.

These were fraudulent statements, if made, and the chancellor found that they were made. Our court has

consistently held that such statements are admissible and the parol evidence rule does not apply when fraud in the procurement of the instrument is relied upon. *St. L.I.M. & S. Ry. Co.* v. *Hambright,* 87 Ark. 614, 113 S.W. 803 (1908); *Hamburg Bank* v. *Jones,* 202 Ark. 622, 151 S.W.2d 990 (1941); *Gainer* v. *Tucker,* 255 Ark. 645, 502 S.W.2d 636 (1973). We find no error in the court's admission of this testimony. The decree of the chancellor is affirmed on direct appeal.

## THE CROSS APPEAL

The appellee first contends that the trial court erred in excluding portions of Toney's grand jury testimony with regard to other activities of Toney and Mears to reap a profit from Mears' political vantagepoint. He argues that the testimony was relevant as it had a tendency to make the existence of the facts in issue more probable or less probable than it would be without this evidence. Rule 401, *Uniform Rules of Evidence.* In view of the trial court's ruling in appellee's favor based upon the evidence, we fail to see the prejudice which resulted from the ruling, if it was erroneous.

The appellee next contends that it was error for the trial court not to give Haskins judgment against Toney for the $6,400 Toney received in the Weinstein agreement. We do not agree. The record reflects that Toney had an agreement with Weinstein (the real estate broker exclusively representing the owners of the tract in the sale) that in the event of a sale procured by or through Toney, Weinstein would give him 40% of the commission due Weinstein under his exclusive listing contract with the owners. At the time of closing Toney was paid $6,400 by Weinstein pursuant to the agreement. The funds with which Weinstein paid Toney were due Weinstein as commissions under his contract with the owners and had nothing to do with the secret profits.

In support of this contention the appellee relies on *Green* v. *Pickens, Adm'r.,* 251 Ark. 691, 473 S.W.2d 862 (1971). In *Green* there was a continuing contract between the principal and real estate agent for the acquisition of tracts of land for investment purposes. Under that contract all prices

were to be approved by the principal and the agent was to be paid a "standard commission" in each transaction.

In a series of these transactions entered into on behalf of his principal, the agent had reaped a secret profit by substantially the same means as that employed by Toney —purchasing lands for his principal at prices lower than that contracted for and pocketing the excess. The standard commission on some of the transactions had already been paid the agent before the principal discovered the betrayal. The agent brought an action against the principal to recover those commissions yet unpaid. The principal counter-claimed for recovery of the secret profits and the commissions already paid, and prayed that the agent's claim be denied. The court upheld the trial court's entry of judgment against the agent for secret profits obtained and commissions paid, and dismissed his claim for all other commissions.

The court declared that a broker is at all times required to make a full disclosure to his principal, not withholding any valuable information from him, and on a failure to make that disclosure the agent forfeits all rights to compensation and renders himself liable for any profits derived. A broker, like any other agent, owes his principal the utmost good faith and loyalty and has a duty to fully disclose to him the facts of any interest of his own or another client which may be antagonistic to that of his principal. He cannot be permitted to take advantage of his position to make a gain for himself by undermining his principal. *Taylor* v. *Godbowl*, 76 Ark. 395, 88 S.W. 959 (1905). As Toney did not disclose to his principal that secret interest in the property that he had by virtue of his contract to purchase it in his own name for the lesser price, he has not been permitted to retain any profit that he has made at his principal's expense. Nor can he under this rule collect any commission or other compensation from his principal even if he had contracted for it. His breach of faith disqualifies him from receiving anything from the betrayal principal. It does not follow, however, that the agent must also forfeit compensation justly due him from one other than the

betrayed principal. Especially is this so where the principal has been made fully aware of that compensation agreement.

Here the addendum to the offer and acceptance between Toney and Haskins disclosed, and Haskins admitted knowledge of, the fact that Toney was to receive a "split" commission from the owners' broker under the contract between that broker and the owners. No part of the $6,000 which Toney received from the owners was to be passed on to Haskins. Toney's interest in Weinstein's contract from commissions was fully disclosed. We find no error in the chancellor's ruling on this point.

Appellee next contends that the chancellor erred in refusing to award prejudgment interest on the amount of the judgment for the secret profits. We agree.

The test in prejudgment interest cases is whether there is a method of determination in both time and amount of the value of the property at the time of the injury. If such a method exists prejudgment interest should be allowed. *Lovell* v. *Marianna Fed. S. & L. Assn.*, 267 Ark. 164, 589 S.W.2d 597 (1979). The amount of the secret profits obtained by the appellant in this case was capable of exact determination both in time and in amount. Prejudgment interest is compensation for recoverable damages wrongfully withheld from the time of the loss until judgment. This interest must be allowed for any injury where at the time of loss damages are immediately ascertained with reasonable certainty. Where prejudgment interest is collectible at all, the injured party is entitled to it as a matter of law. *Wooten* v. *McClendon*, 272 Ark. 61, 612 S.W.2d 105 (1981). In the present case the secret profits had an exact value on the date of the closing of the transaction. The appellee has been wrongfully deprived of the use of these funds since that date. Therefore he is entitled not only to the amount of the secret profits but to interest from the date of his loss at the rate of 6% per annum as required by Article 19, § 13, Constitution of Arkansas.

The appellee also argues that the conduct of the appellant in this case warranted an award of punitive

damages. Exemplary damages are not recoverable as a matter of right, even though the facts in a given case might be such as to make their allowance proper. The allowance of such damages rests within the discretion of the trier of fact. *Bergdorf* v. *Chandler,* 220 Ark. 727, 249 S.W.2d 562 (1952). Assuming that the evidence would have supported an award for punitive damages, it is noted that in the amended and substituted complaint of the appellee he sought equitable relief by way of release from the consequences of the contract. Equity will not ordinarily enforce penalties and it has been held that one who appeals to a court of equity for relief waives the award of punitive damages as a matter of right. *Stolz* v. *Franklin,* 258 Ark. 999, 531 S.W.2d 1 (1975); *Hendrix* v. *Black,* 132 Ark. 473, 201 S.W. 283 (1918).

The decree of the chancellor is affirmed as modified in this opinion with respect to the allowance of prejudgment interest on the secret profits recovered at the rate of 6% per annum from the date of payment to the date of the decree previously entered.

Affirmed as modified.

CORBIN, J., dissents.