**Aaron L. WATSON and Rubena Watson d/b/a Watson's Antique Shop, Plaintiffs,**

v.

**H.A. MIEARS, Defendant.**

**No. HS 83-6076.**

United States District Court,
W.D. Arkansas,
Hot Springs Division.

Sept. 5, 1984.

Sam L. Anderson, Anderson & Anderson, Richard S. Muse, Lane, Muse, Arman & Pullen, Hot Springs, Ark., for plaintiffs.

Donald R. Roberts, Hot Springs, Ark., for defendant.

## MEMORANDUM OPINION

OREN HARRIS, Senior District Judge.

In this diversity action the plaintiffs, Aaron L. Watson and Rubena Watson, d/b/a WATSON'S ANTIQUE SHOP, allege in their complaint filed August 9, 1983, against the defendant, H.A. Miears, a breach of contract entered into in writing on April 13, 1983.

After several days of negotiation, the contract entered into by the parties provides that defendant Miears agrees to the purchase of the entire contents of Watson's Antique Shop located in Hot Springs, Arkansas, with certain exceptions, for a price of $250,000.00. Further, the contract provides that the plaintiffs agree to sell the contents of Watson's Antique Shop for the sum of $250,000.00 with a down payment of $85,000.00 paid to the plaintiffs, and the balance of the payment, $165,000.00, to be paid by the defendant within 90 days, or no later than July 1, 1983.[1]

1. THE CONTRACT:

I H.A. Miears have purchased the Entire contents (except contents of lay-a-way room and workshop) of Watson's Antique Shop located at 962 Airport Road—Hot Springs, Arkansas 71913. The purchase price is $250,000.00.

Amount paid this date of April 13, 1983 is $85,-000.00. Balance due $165,000.00 due in 90 days (July 12, 1983). It is also agreed that H.A. Miears has use of the property located at 962 Airport Road, Hot Springs Arkansas 71913 for a period of 90 days ending on July 12, 1983. It is

The plaintiffs are citizens of the state of Arkansas and residents of the city of Hot Springs. They were, at the time the contract was entered into by the parties, owners of Watson's Antique Shop with several thousand items included therein. The defendant is a citizen of the state of Oklahoma and a resident of Oklahoma City, Oklahoma. The sum involved in this litigious action exceeds $10,000.00, exclusive of interest and costs.

Jurisdiction is based on 28 U.S.C. § 1332 in that there is diversity of citizenship between the plaintiffs and the defendant, and the amount in controversy exceeds the sum of $10,000.00, exclusive of interest and costs.

Even prior to the date the payment of $165,000.00 was due and, in fact, within days of the contractual agreement, a serious controversy or conflict over the contents of Watson's Antique Shop arose. Under rather unusual circumstances, the defendant claimed that numerous items that should have been included with the sale had been removed by the plaintiffs. The conflict between the parties resulted in the failure of the defendant to make payment of the balance due under the contract within the 90 days, or no later than July 12, 1983. Instead thereof the defendant directed a letter to the plaintiffs dated July 11, 1983, accusing the plaintiffs of having removed a large amount of merchandise "after we signed the agreement." The letter included, inter alia, that the agreement between the parties was considered by the defendant as "rescinded."

The plaintiffs allege that the defendant defaulted under the agreement and seek to recover the sum of $165,000.00 with interest and additional sums such as telephone, rental, and other costs accrued as a result of the alleged breach of contract.

The defendant has answered the complaint of the plaintiffs denying the contention of breach of contract and filed a counterclaim against the plaintiffs alleging that the defendant relied upon representations of the plaintiffs in regard to the quantity and quality of the antiques contained within Watson's Antique Shop. In the counterclaim the defendant alleges that subsequent to the signing of the contract the plaintiffs, without the knowledge or consent of the defendant, removed antiques valued in excess of $50,000.00.

Additionally, in the defendant's counterclaim it is alleged that, at the time the parties entered into the contract, the plaintiffs represented that all merchandise was free and clear of obligations. Defendant contends there were multiple outstanding liens against the property at the time of the agreement. The defendant alleges that as a consequence of the plaintiffs' action he was damaged in the sum of $250,000.00.

Additionally, the defendant alleges that the plaintiffs' action was intentional, willful, wanton and by design, which inflicted harm upon the defendant, and he claims punitive damages in the sum of $1,500,-000.00.

In this case, discovery, at the outset and for several months, became most difficult. It was wrought with bitterness, resulting in charges and countercharges. It was necessary for the Court to consider and enter numerous orders affecting both parties and, principally, requiring the defendant to comply with the Rules and Orders of the Court. The case was further complicated by the Court-ordered auction sale of some 1100 items still being held in Watson's Antique Shop building as late as December, 1983.

The case was regularly scheduled for trial on the merits to commence May 23, 1984. After a three-day trial to the Court, the case was taken as submitted and counsel for the parties given the opportunity to file post-trial briefs.

agreed that H.A. Miears can hold an auction on these premises for the purpose of liquidating stock, and may use the house next door to Watson's Antique, 962 Airport Road—Hot Springs, Arkansas 71913 for the period of 90 days ending July 12, 1983.

Signatures Notarized

The Court has received briefs and the case is ready for decision. From the substantial testimony presented to the Court, without the intercession of a jury, numerous exhibits entered, briefs submitted by counsel in the case, and the entire record, the Court proceeds to decision on the issues developed during the course of the trial.

Having the benefit of the trial record of the case, the Court makes the following findings of fact and conclusions of law, pursuant to Rule 52 of the Federal Rules of Civil Procedure.

In order to fully understand the serious dispute and actions of the parties in this case, a substantial statement of the facts, as developed by the record, is necessary.

The plaintiffs in this case have operated a substantial antique business in Hot Springs, Arkansas for approximately 13 years. The defendant, by profession, has been an auctioneer of antiques and has operated an antique business in Oklahoma City, Oklahoma. Although for years he has been engaged primarily as an auctioneer, defendant actively has been in the antique business for approximately 12 years. He operates the Antique Auction Galleries in Oklahoma City. He has also had an interest in such a business in Prague, Oklahoma, which he claimed was his wife's business.

The defendant would also buy an antique business, which he would purchase outright, and arrange an auction for the sale of the contents at the location and, in some instances, some of the items for such sale would be transported to Oklahoma and either be placed in his own shop or in a shop in which he was interested in the area.

In the early part of March, 1983, Mr. Miears purchased Max Shaw's Antique Shop in Hot Springs, Arkansas. He arranged for an auction, which was held on April 10 and 11, 1983, in Hot Springs. While making preparations for the auction he met the plaintiff, Aaron Watson. In time, the defendant, with his bookkeeper, Georgette Draybek, visited the plaintiffs' antique shop for the purpose of observing it and its contents. This visit was on or about March 27, 1983. The plaintiff Aaron Watson was not at his shop at that time. An employee of the plaintiffs offered to serve them, and when advised they were there merely to visit and see the place, she requested their names. Defendant left his name and explained the reason he was in Hot Springs. This visit by the defendant prompted Mr. Watson to return the visit by going to Max Shaw's place. Subsequently, the defendant again visited Watson's Shop at which time he observed the contents of the shop and inquired of Watson if his shop was for sale and, if so, what price he would put on it. Watson did not know at the time, but would discuss it with his wife.

On April 2 and 3, 1983, Mr. Watson, with some assistance, made a complete inventory, item by item, of his shop. (PL. EX. 1). In doing so he placed a value on the contents of his shop in the amount of $392,-655.00.

Subsequently the defendant Miears visited the plaintiffs' shop, either alone or with Ms. Draybek or some other person. On one occasion he and Ms. Draybek proposed to take what he referred to as a "bulk inventory." This was explained to be his method of determining an approximation of the items, which was, in actuality, an estimate of antiques at the plaintiffs shop. On the basis of his estimate of the quantity and kind of antiques in the shop, he offered the plaintiffs $250,000.00 for the contents of the shop. This offer was made on April 6, 1983. Mr. Watson made a counter-offer to sell the contents of his shop for $350,-000.00. The defendant Miears replied he would not pay the price Watson placed on the contents of the shop, his business.

However, defendant Miears continued to be interested, and on or about April 8, 1983, he, together with an acquaintance, Mr. Bill Caton of Pittsburgh, Pennsylvania, went by to inspect the shop and to determine if Mr. Miears' offer appeared to be an appropriate price to pay for the goods.

During this method of continued negotiations by the numerous visits to the shop by defendant Miears, Watson's Antique Shop

was open for business to the public and continued to do business day by day. Not only were some sales made from Watson's Shop, but Mr. Watson attended an auction in Mississippi at the end of March or early April where he purchased and transported various items of antiques and placed them in the shop as additional contents for sale. Also, about this time, Mrs. Watson purchased a load of antiques from Malvern, Arkansas, which were added to the contents of the Shop. Mr. Watson also, on either April 10 or 11, 1983, purchased $5,000.00 of antiques from the Max Shaw auction, which he also placed in the Shop as additional contents.

On the morning of April 13, 1983, defendant Miears and Ms. Draybek went to Watson's Antique Shop and inquired if Watson was ready to take his offer. Mr. Watson advised Miears that, having discussed it further with his wife, they were prepared to accept his offer of $250,000.00. They further agreed that defendant Miears would pay $85,000.00 of the total amount at that time, and the balance of $165,000.00 would be paid within 90 days, or not later than July 12, 1983.

During the negotiations that lasted for these several days, plaintiff Watson went to the Grand National Bank in Hot Springs and advised the President of his negotiations to sell his store to Mr. Miears. The Bank had liens on the property and, should the sale mature, it would be necessary to have the liens released. He obtained assurance from the Bank officers that there would be no trouble and that the release would be worked out so there would be no delay in the transfer of property should such sale occur.

After the parties entered into the agreement on April 13, 1983, they went to the Grand National Bank where the Contract (See Note 1 herein) was prepared. They intended to utilize the services of the attorney at the Bank in the preparation of the contract. He was not available, and they

obtained the services of a secretary. She prepared the Contract for them just as they outlined it to her. Each of the parties, i.e., plaintiff Aaron L. Watson and defendant H.A. Miears, signed the Contract in the presence of the secretary, and plaintiff Rubena Watson signed it when they returned to Watson's Antique Shop later in the day, April 13, 1983.

When plaintiff Aaron Watson and defendant Miears returned to the shop, Ms. Draybek was still at the Shop, where she had remained most of the time since that morning when they arrived at approximately 10:30 a.m. She had ample opportunity to observe the Shop, open for business, until the moment of the arrival of Mr. Watson and Mr. Miears in the early afternoon. Defendant Miears, and those associated with him, having concluded with details following the conclusion of the Max Shaw auction, and having loaded their vehicles ready to depart for Oklahoma, proceeded to take over the contents of Watson's Shop.

Bert R. "Sonny" Meyers, Jr. was associated with and an employee of defendant Miears in connection with the Max Shaw auction. The auction having been concluded, Mr. Meyers began his return from Hot Springs to Oklahoma on that morning, April 13. It was understood between him and Mr. Miears that Meyers would arrive at Van Buren, Arkansas, on his return to Oklahoma that afternoon. Miears contacted Meyers by telephone after he, Meyers, arrived in Van Buren and advised him that he had purchased Watson's Antique Shop and for Meyers to return to Hot Springs so he could take charge of the business purchased from Watson. Meyers returned to Hot Springs, arriving late afternoon at approximately 5:30 p.m.[2]

While biding the time of Sonny Meyers return, Mr. Watson and Mr. Miears made final preparations to turn the business over to Mr. Miears, pursuant to the contract. There were certain items that had been sold by Mr. Watson which were moved into

---

**2.** These parties associated with defendant Miears, Ms. Draybek and Sonny Meyers, owned or had owned their own antique shops in Okla-

homa, as did Mrs. Miears, wife of defendant Miears.

an adjoining room separate from the business. Plywood was placed over the door and nailed from the inside of the business and furniture moved against the plywood, preventing any entrance from the adjoining lay-a-way room. All entrances to the building of the business were closed to prevent any outside entrance except the front door. This having been completed, plaintiff Watson turned over all keys to defendant Miears, which were given to Sonny Meyers to remain and have charge of the business. Defendant Miears and Ms. Draybek then left for Oklahoma City. Sonny Meyers moved his motor home and set up in front of the business just outside of the front door for security of the Shop.

Mr. Meyers entered the Shop the next morning, April 14, 1983, to start making preparation for an auction to be held by Mr. Miears within the next few weeks. He had been in the Shop on Monday of the same week. Without any further explanation as to his knowledge of what contents were in the Shop, he claimed that as soon as he entered the business on Wednesday morning he noticed there was considerably less stock in the shop than when he had observed it the previous Monday.

According to Sonny Meyers, he called Mr. Miears that evening and reported "that there were quite a number of things that were not there." Mr. Meyers proceeded to testify in detail about himself, his experience, and his contention as to the status of the business he was left there to look after. His testimony was less than persuasive and presented a serious question as to credibility.

Defendant Miears returned on Saturday, April 16. Ms. Draybek had previously testified that she returned on Friday, April 15. She was positive in her testimony that the boxes of jewelry, watches and numerous other items had been removed from the shop. When Mr. Miears arrived the following day he inquired of Mr. Meyers about the watches. Sonny Meyers testified that Defendant Miears had previously instructed him to be sure and gather the jewelry and watches and put them in boxes. When

Mr. Miears asked him about it, Meyers stated: "I rooted them up and found them." He said there was a box full of them, a shoe box full, and that he knew where they were. They were inside the case behind the glass. It was a jewelry case and he said there were two of them, one full and another he just looked at. He said the watch cases were excellent, "14 and 18 carat gold type." This testimony is in serious conflict with the testimony of Ms. Draybek.

As a result of the contention that a substantial quantity of items had been removed from the shop, Mr. Miears accused plaintiff Watson of selling or otherwise disposing of in excess of $50,000.00 in value of items that were supposed to be in the store. He sought legal advice from an attorney in Hot Springs, Arkansas, as well as his attorney in Oklahoma. He claimed that he wanted out of the contract, and there was some discussion about how much it would take for plaintiff Watson to relieve him of the contract obligation. The controversy caused substantial feelings between them which became quite serious in their respective contentions. Notwithstanding the contract, defendant Miears advised Watson that he was going to proceed to protect himself and get the $85,000.00 that he had paid to the plaintiff upon entering into the contract between them.

At this stage the defendant also raised the question that Watson had sold him the stock in the Antique Shop which was under mortgage to the Grand National Bank of Hot Springs, Arkansas. He used this as an additional contention that he had the right to be relieved of his contract obligation. Without elaboration on the issue, it is sufficient that the Honorable John Parkerson, representing defendant Miears, obtained satisfaction of the liens and clearance on the property. Mr. Miears was so notified by Mr. Parkerson. At their last meeting Mr. Miears stated to Mr. Parkerson, "I was going to honor the contract," and Mr. Parkerson's task was to insure that the liens would be released.

Among the confusion and controversy over the contentions between the parties, defendant Miears admitted that when he left to go back to Oklahoma he "loaded up merchandise and sent it to Oklahoma City to his Antique Auction Galleries." He did not explain the items or the quantity which was transported to Oklahoma.

Following this action, defendant Miears arranged for and had a three-day auction at Hot Springs, May 13, 14 and 15, 1983. After the auction, Mr. Miears admitted that he transported merchandise from Watson's Shop to his Antique Auction Galleries in Oklahoma City. Although he indicated to Mr. Watson that he would not honor the contract further, he advised that he was going to take merchandise from the store to his place in Oklahoma without indicating the quantity and contents.

It later developed that defendant Miears mingled merchandise from Watson's Shop with his own merchandise from the shop in Oklahoma in a two-day auction. Some of the merchandise defendant claimed was missing from Watson's Shop was identified in the advertising of the auction of merchandise in Oklahoma. Further, there was testimony that Mr. Watson, with a certain photographer, took pictures from Mr. Miears' business, and other such antique shops in Oklahoma, as having come from Watson's Shop in Hot Springs, Arkansas.

On July 11, 1983, the day before the additional payment of $165,000.00 was due to be paid by defendant Miears to plaintiff Watson, Mr. Miears directed a letter to the Watsons referring to the contract and his construction of certain provisions, and accusing Watson of taking substantial goods from the store and stating that he did not "intend to go any further with this deal." He concluded his letter to the Watsons by stating "I consider the agreement rescinded as both parties are compensated and back in the position they were before." (PL EX 12).

The above letter in which defendant Miears proposed to rescind the agreement should be noted as written three months after the defendant had removed an unknown quantity of unidentified contents from Watson's Shop to Oklahoma and after a three-day auction by defendant Miears without any accounting as to the results. The letter was received by Mr. Watson on July 14, 1983. It was also an official notice that he, defendant Miears, would not make payment of the $165,000.00 as due on July 12, 1983.

On the question of the defendant's contention that the plaintiffs had removed substantial merchandise from the store, and the alleged misrepresentation, the facts are crystal clear that such allegations are without merit.

From the first day defendant Miears visited Watson's Antique Shop, March 27, 1983, until and including April 12, 1983, the plaintiffs sold out of their store, as the store was open for business during all of this time, merchandise and items of the value of $31,155.00. (D Ex 10).

During the same period of time the plaintiff purchased, from various sources, merchandise exceeding the value of $27,468.00 which was added to the inventory of the plaintiffs' Antique Shop. A substantial part was purchased at an auction in Mississippi and became a part of the plaintiffs' total stock the early part of April, 1983. There was an additional "lot" of furniture purchased at Malvern, Arkansas and placed in the plaintiffs' merchandise stock. Plaintiffs also purchased antique items of the value of $5,000.00 from the Max Shaw Auction in Hot Springs which was also added to the plaintiffs' merchandise stock in the store. (D EX 9).

Defendant alleges that the plaintiffs removed certain jewelry, cut glass, diamond rings, etc., from the store. At the auction in Mississippi the latter part of March, Mr. Watson purchased these items for Mrs. Watson personally. They were not placed in nor did they become any part of the merchandise of Watson's Antique Shop. Most of this was for Mrs. Watson personally and all of it was put in their home as their personal items of merchandise. (D EX 8).

Near the close of the hearing Mrs. Watson testified that after the contract had been entered into by the parties and the keys of the shop turned over to defendant Miears, which were accepted and the transfer completed, the items in that shop were as had been reported to them. Mrs. Watson testified that the jewelry, watches and such items were in place. The cut glass items, in such numbers as explained, were placed in accordance with their custom in placing such items at various locations in the main building. So it was with the Roseville pottery, RS Prussia porcelain, dolls, etc. She explained the jewelry and watches were in two small display trays and including rings and watches in individual boxes, just as testified to by Mr. Meyers. Her explanation was precise in identity and location of these various items and that they were there and in place when the Shop was turned over to the defendant, in accordance with the contract entered into by the parties. Mr. Miears left everything in the custody of Mr. Meyers, who had sole possession with no one else entering the Shop but him for the next two days.

The defendant Miears claims that he has provided a complete accounting of the funds realized from the merchandise sold at the three-day auction in Hot Springs, the auction from his own business in Oklahoma, and such other merchandise that he transported from Watson's Shop in Hot Springs to Oklahoma. The record discloses that Mr. Miears has entered as exhibits proposed accountings of his handling and sale of the property from Watson's Shop. However, notwithstanding the efforts made on behalf of the plaintiff and as directed by the Court on various motions, the information included in defendant's exhibits entered in the case were not made available nor was there any accounting made prior to the trial of the case, May, 1984. Under the circumstances, the Court has a serious question as to the accuracy of a complete accounting of the merchandise from Watson's Shop.

■ The primary question, as between the parties, can only be determined by passing judgment on the credibility of the witnesses. The Court concludes, after carefully listening to the testimony of the witnesses, observing the witnesses on the witness stand, analyzing the exhibits and the entire record, that credibility must be determined in behalf of the plaintiffs' witnesses in this case. The Court is persuaded that the stock of antique merchandise, as was reported by the plaintiffs and known from observation by the defendant, was in the approximate amount, identity and value as the parties understood and agreed upon in entering into a valid contract.

The Court is of the opinion that substantial testimony has been received to establish by a preponderance of the evidence that defendant Miears failed to comply with the terms of the valid contract entered into by the parties and that after acceptance of the goods, some of which were disposed of during a three-day auction in Arkansas and some after being transported to Oklahoma. Also, when the balance of the payment due on the Contract was not made in accordance with the Contract, the defendant deliberately and intentionally breached the contract, resulting in substantial damages to the plaintiffs.

The Court also concludes that the contention of the defendant as to the lien upon the property at the Grand National Bank is without substance or merit and offered no problem in the valid transfer of the property.

Under the creditable testimony in this case, the Court concludes that the plaintiffs are entitled, as a matter of law, to recover from the defendant, H.A. Miears, the unpaid balance of the contract price for Watson's Antique Shop contents. This conclusion is reached from the unambiguous provisions of the Uniform Commercial Code as adopted in Arkansas, Ark.Stat.Ann. §§ 85–2–101 et seq.

The Uniform Commercial Code subsection 2–709(1) provides in pertinent part:

"When the buyer fails to pay the price as it becomes due the seller may recover ... the price (a) of goods accepted....."

Under subsection 2–606(1), "Acceptance of goods occurs when the buyer ... (b) fails to make an effective rejection (subsection 1 of Section 2–602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them...." Subsection 2–602(1) in turn provides: "Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer reasonably notifies the seller." 568 F.2d 76.

As applicable to this case, tender occurred and the goods were accepted in accordance with the contract.

It is quite clear that there was an opportunity to inspect the goods and that the goods were accepted under subsection 2–606(1)(b) and that the plaintiffs Watson are, accordingly, entitled to recover the unpaid balance of the contract price under the provisions of subsection 2–709(1)(a). See *Kohlenberger, Inc. v. Tyson's Foods, Inc.,* 256 Ark. 584, 510 S.W.2d 555, 560–61 (1974).

Therefore, the Court concludes the defendant breached the contract which triggered sellers' remedies under the Uniform Commercial Code. These remedies generally include the right to "e" recovery damages for non-acceptance, or, in a proper case, the price (§ 85–2–703(e), Ark.Stat. Ann.).

Section 85–2–709, Ark.Stat.Ann., provides:

"Action for the price. (1) When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under the next section the price

"(a) of goods accepted or of conforming goods lost or damaged within a commercially reasonable time after risk of their loss has passed to the buyer; and

"(b) of goods identified to the contract if the seller is unable after reasonable effort to resell them at a reasonable price or the circumstances reasonably indicate that such effort will be unavailing.

"(2) Where the seller sues for the price he must hold for the buyer any goods which have been identified to the contract and are still in his control except that if resale becomes possible he may resell them at any time prior to the collection of the judgment. The net proceeds of any such resale must be credited to the buyer and payment of the judgment entitles him to any goods not resold.

"(3) After the buyer has wrongfully rejected or revoked acceptance of the goods or has failed to make a payment due or has repudiated (Section 2–610 [§ 85–2–610]), a seller who is held not entitled to the price under this section shall nevertheless be awarded damages for non-acceptance under the preceeding section." See: *Unlaub Co. Inc. v. Sexton,* 427 F.Supp. 1360 (1977), affd. 568 F.2d 72, 76–77 (8th Cir.).

■ The Court further concludes that because the defendant breached the contract the Commercial Code defenses sought by defendant are not available to defendant and, therefore, the defendant's counterclaim is unavailable. The defendant, in the opinion of the Court, has failed its burden on the counterclaim. The counterclaim, therefore, will be dismissed.

Based on the findings and conclusions in this opinion, judgment will be entered in behalf of the plaintiffs Watson in the sum of $165,500.00, the amount due and unpaid in accordance with the terms of the contract, together with pre-judgment interest of six percent (6%) thereon from July 12, 1983, to the date of such judgment. Ark. Stat.Ann. 29–124; *Wooten v. McClendon,* 272 Ark. 61, 612 S.W.2d 105 (1981); *Toney v. Haskins,* 7 Ark.App. 98, 644 S.W.2d 622, 627 (1983).

As incidental to the damages suffered by plaintiffs, additional judgment will be entered in the sum of $1,200.00 as rental cost on the "Green Building."

Plaintiffs seek judgment of a reasonable sum for loss of use of the main building. However, no testimony was presented to establish such damage, if any, was suf-

fered for the loss of use of the main building owned by the plaintiffs.

Furthermore, the Court concludes that a telephone was installed and accepted for the use and benefit of defendant Miears. The plaintiffs, at defendant's request, had the telephone installed which was installed in the plaintiffs' name. As a result, the plaintiffs paid a total sum of $720.50, and judgment for such sum will be included in favor of the plaintiffs and against the defendant.

The plaintiffs also request judgment on alleged profit-loss for the years 1982 and 1983. The Court is of the opinion that judgment on such profit-loss, as requested by the plaintiff, would not be justified under the testimony presented on the request.

A separate judgment will be entered on behalf of plaintiffs Watson and against the defendant Miears in the sum of $167,420.00 together with interest of six percent (6%) from date of judgment until satisfied. Pre-judgment interest of six percent (6%) will be included only as to the sum of $165,500.00.

From the Court ordered auction scheduled November 12, 1983 and held December 10, 1983, there is in the registry of the Clerk a total sum of $21,374.67. Of this sum, $1,179.09 is accrued interest. By separate Order, the clerk will be directed to disburse the sum to the plaintiffs, Aaron L. Watson and Rubena Watson, d/b/a Watson's Antique Shop, which sum is to be deducted from the total judgment awarded to the Watsons against the defendant Miears. Therefore, final judgment will be entered in behalf of plaintiffs Watson and against defendant Miears in the sum of $146,045.33.

A separate judgment will be entered in accordance with this opinion.