**BOLES et al. v. AKERS.**

No. 15320—Opinion Filed Oct. 27, 1925.

Rehearing Denied March 16, 1926.

**1. Trusts—Constructive Trust—Evidence to Establish—Burden of Proof.**

A constructive trust may be established by parol evidence, but the law for the safety of titles requires that the proof should be of the most satisfactory kind. The onus of establishing a constructive trust rests upon him who seeks its enforcement, and before a court of equity will be warranted in making a decree therefor, the evidence must be clear, unequivocal, and decisive.

**2. Same.**

The existence of a constructive trust, as well as of a resulting one, must be proved by clear, unequivocal evidence.

**3. Trusts—Resulting Trust — Furnishing Consideration Money for Purchase.**

A resulting trust is that such a trust can arise only in favor of a person who claims to have furnished the consideration money, when such consideration, or some aliquot part thereof, was furnished as part of the original transaction at the time the purchase was made.

**4. Joint Adventures—Similarity to Partnership—Single Transaction.**

While the courts do not treat a joint adventure as identical with a partnership, it is so similar in its nature and in the contractual results created thereby that the rights as between the adventurers are governed by the same rules that govern partnerships. A joint adventure generally relates to a single transaction.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Carter County; A. E. Walden, Judge.

Action by J. H. Akers against Z. L. Boles and T. D. Wagner. Judgment for plaintiff, and defendants appeal. Reversed.

Ledbetter & Ledbetter, for plaintiffs in error.

Moore & West, for defendant in error.

Opinion by MAXEY, C. This is an action by J. H. Akers against Z. L. Boles and T. D. Wagner, wherein Akers seeks to recover an interest in an overriding royalty based on the interest of what is known as the Ellis estate.

There was a motion filed by the defendants to require the plaintiff to make his petition more definite and certain, which was sustained by the court, and the plaintiff filed his amended petition. The 4th paragraph of said amended petition sets out plaintiff's case in the following language:

"The plaintiff alleges in his fourth paragraph, that he and T. D. Wagner and Z. L. Boles made and entered into an oral agreement to buy an oil and gas lease covering the interest in said above described property owned by the estate of James F. Ellis, deceased, and on the 13th day of December, 1922, in pursuance to said agreement, an oil and gas lease was purchased, covering the interest of the said James F. Ellis in said land, which was executed by T. H. Slover, the administrator of the said Ellis estate, and that the oil and gas lease was taken in the name of T. D. Wagner for the use and benefit of the plaintiff and T. D. Wagner and Z. L. Boles. That said oil and gas lease was recorded in the office of the county clerk of Carter county."

It appears from the pleadings and the evidence, that there were a large number of persons interested in a certain 100-acre tract of land. This 100-acre tract is not described in the pleadings. but it is agreed among the parties that it is located in Carter county, Okla., and that the plaintiff had an interest in the 100 acres, and both of the defendants had an interest, and several other parties had small interests in the 100-acre tract. But there was a 12½-acre interest that belonged to J. H. Ellis, who died sometime before this litigation commenced, and the interest of his estate was sold through the probate court at the front door of the courthouse in Carter county. All of the parties interested in this 100-acre tract were anxious to get all of the interests consolidated, and the Cotton Belt Petroleum Company was anxious to acquire a lease on all of the interest, and agreed if it could get a lease on all of the interest it would drill a well and develop the lease.

It appears that the plaintiff, Akers, and Boles and Wagner were all officing in the same building, with a door between the offices which was usually kept open between the offices of the plaintiff and the defendants. Boles and Wagner were very active in acquiring the various interests, and had acquired all of the interest except that belonging to the Ellis estate, and it is the contention of plaintiff that he and the defendants Boles and Wagner entered into an agreement to have the Ellis interest sold through the probate court, and they would bid it in and own it jointly. This agreement is denied by Boles and Wagner. However, the lease was put up and sold, and it appears that the parties had the impression that there had to be three bids on the lease in order to have a legal sale. The

lease was appraised at $7,000, and the plaintiff, Akers, made the first bid, and Boles made the second bid, and Wagner made the third bid, bidding $2,000, and it was knocked off to him, and before the confirmation day, Boles and Wagner made a deal with the Cotton Belt Petroleum Company to put up the purchase price of $2,000, and Wagner, the purchaser, would assign the lease to the Cotton Belt Petroleum Company. This agreement was carried out, and the Cotton Belt Petroleum Company put up the $2,000 to pay for the lease, so that neither one of the three parties who bid on the land had to put up any money. The Cotton Belt Petroleum Company took possession of the entire 100 acres, and commenced to drill a well (and have probably brought in the well—the evidence is not clear), and it was some two months afterwards discovered by Akers that the Cotton Belt Petroleum Company had given to Wagner an assignment of a one-eighth overriding royalty on this 12½ acres bought from the Ellis estate. Akers brought this suit a few days after he learned that Wagner and Boles had this overriding royalty, and he claims that he is entitled to a one-third interest of the overriding royalty, by reason of the agreement that he claims he, Boles, and Wagner entered into, prior to the sale of the said interests by the administrator.

This is in substance the controversy between plaintiff and the defendants. The plaintiff testified on the trial of the case, that he, Boles, and Wagner were the buyers of this 12½ acres, each one to pay his part and to run it up to $2,000, that is, what it was appraised at, each one to pay his part; that each one was to pay one-third and each to own a one-third interest. He testified that he went over to the courthouse the day it was sold, and Mr. Boles asked him to make the first bid, and that he would make the second, and let Wagner buy it in. He said the agreement between him and Boles and Wagner was an oral agreement and was not reduced to writing: that each one was to pay a one-third, but that the Cotton Belt Petroleum Company put up the money to pay the purchase price of the lease, and neither one of them had to put up any money; that this was about all he did in regard to the matter. Boles denies flatly that there was any such agreement made by him. Wagner and Akers; that they were all officiating together, and were all interested in getting the title cleared up on the 100 acres so that the Cotton Belt Petroleum Company would drill a well and develop it, and it seems to have been the principal subject of conversation around the office. Wagner said that he talked to Akers about bidding on the property, but that there was no agreement that Akers was to have an interest in it. He was just to make a bid in order to get it started. Frank Harrell, who was the officer representing the Cotton Belt Petroleum Company in the deal, testified that after the Ellis interest was sold, Boles and Wagner came to him and made arrangements to have the Cotton Belt Petroleum Company put up the money, $2,000, to pay the administrator for the lease as soon as the sale was confirmed; that he agreed to do that, and did put up the $2,000; that under this agreement, Mr. Wagner was to assign the lease on the Ellis interest to the Cotton Belt Petroleum Company as soon as the sale was confirmed, and he got his assignment from the administrator, and that he did assign the lease to the Cotton Belt Petroleum Company; that after the lease was assigned to the Cotton Belt Petroleum Company, Wagner and Boles told him that they had been out a good deal of time and some money in acquiring the various interests, and that they thought the Cotton Belt Petroleum Company ought to give them an overriding one-eighth royalty in the Ellis interest, and they finally agreed to do that, and assigned a one-eighth overriding royalty to them; that he did not know Akers in the transaction and had no dealings with him; that his dealings were all with Wagner and Boles.

The administrator, Mr. Slover, did not know Akers in the transaction and had no dealings with him, and several other witnesses testified to conversations had there in the office. They were introduced both for the plaintiff and the defendants, but their testimony was had when Akers, Boles and Wagner were not present, or perhaps one of them was present. But the testimony is largely of a negligible character and has very little force. In our judgment, the evidence that there was no such agreement largely preponderates in favor of the defendants. The court entered judgment for the plaintiff, but this being an equitable case, we have the right to weigh the testimony, and have read the entire testimony and have reached the conclusion that the judgment of the court is not sustained by the evidence. It is hard to tell from the record just what plaintiff relied on. In the briefs of the parties much space is taken up with a discussion of trusts and joint adventures, but under the rules laid down in this state in a number of cases, we think the plaintiff falls far short of es-

tablishing any kind of a claim to an interest in this overriding royalty.

In the case of Hayden v. Dannenberg, 42 Okla. 776, 143 Pac. 859, Justice Sharp in delivering the opinion of the court collated the authorities which lay down the following rule as to trusts:

"The existence of a constructive trust, as of a resulting one, must be proved by clear, unequivocal evidence."

There is a long line of decisions from this court and other courts supporting this rule.

The case of Woodworth v. Franklin, 85 Okla. 27, 204 Pac. 452, is another case that strongly supports the foregoing rule, and a very late case from this court is Secrest v. Nobles, 97 Okla. 277, 223 Pac. 863. The third paragraph of the syllabus is as follows:

"A constructive trust may be established by parol evidence, but the law for the safety of titles requires that the proof should be of the most satisfactory kind. The onus of establishing a constructive trust rests upon him who seeks its enforcement, and before a court of equity will be warranted in making a decree therefor, the evidence must be clear, unequivocal and decisive."

Counsel for plaintiff contend that if the evidence of the plaintiff fails to establish a partnership, it is sufficient to establish a joint adventure, but we do not think so. A joint adventure is governed by the same rules as partnerships, and in fact is a partnership. Ruling Case Law, vol. 15, page 500, paragraph 2:

"Nature of Relation—While it is true that at common law coadventurers in an enterprise were recognized in courts only when the element of partnership was disclosed and on proof of the essential of a partnership, this is not the law at the present time, and, although courts in modern times do not treat a joint venture as identical with a partnership, it is so similar in its nature and in contractual relationships created thereby, that the rights as between the adventurers are governed practically by the same rules that govern partnerships. A joint adventure generally relates to a single transaction. The usual test of a partnership as between the parties to a joint adventure is their intent to become partners."

It will be seen from this quotation that a joint adventure generally relates to a single transaction. If it could be said that the parties to this suit entered into a joint adventure, they would be limited to the single transaction of buying the Ellis interests, each one to pay his one-third of the purchase price, but the purpose for which this agreement was formed, if at all, was to furnish the purchase money to pay for the Ellis lease at the administrator's sale. The Cotton Belt Petroleum Company took the lease off their hands and paid the $2,000. It is the agreement, as testified to by plaintiff as well as by the defendants, that they had no other purpose than acquiring the Ellis interest, and when that was done through the deal with the Cotton Belt Petroleum Company, the purposes of the agreement, if any, ended, and the acquiring by Wagner and Boles of an overriding royalty was a separate transaction unconnected with the original agreement; and it looks to us like the idea of claiming an interest in this overriding royalty by the plaintiff was an afterthought.

We are thoroughly convinced from a reading of all the testimony of all the witnesses, that plaintiff fails to make out a case of any kind, and that the judgment of the trial court is erroneous, and the same is hereby reversed, and the case remanded to the trial court, with instructions to set aside the judgment heretofore rendered, and dismiss the action.

By the Court: It is so ordered.