George A. TACKETT *v.* James Dorthan GILMER

73-42                                    496 S.W. 2d 368

Opinion delivered June 18, 1973

*Killough & Ford,* for appellant.

*Barrett, Wheatley, Smith & Deacon,* for appellee.

Carleton Harris, Chief Justice. George A. Tackett, appellant herein, was injured on May 13, 1970 while operating a John Deere tractor. The chisel plow being pulled by the tractor struck an underground stump, breaking, being pulled up onto the tractor, and injuring Tackett. A bolt from the plow also struck appellant in the forehead. This accident occurred on land known as the Glenn Bostic Farm which was being leased and farmed by Roy Crawford. At the time of the incident, Tackett was an employee of James Dorthan Gilmer, appellee herein. Gilmer, also a farmer, and Crawford, for several years, have used labor and equipment belonging to the other. Under their arrangement, they would "swap work", but the employees of Gilmer and Crawford were paid by their respective employers. On some days, Crawford and his employees would help Gilmer with his farming operation, and on other days Gilmer and his employees would work on the Crawford farm. Neither man had any interest in the land, equipment, crop, or crop proceeds of the other.

Tackett instituted suit against Gilmer and Crawford, alleging that they were engaged in a joint venture. Depositions were taken from Tackett, Gilmer, Crawford, and Crawford's son, Phillip, and subsequently, both Gilmer and Crawford moved for summary judgment. The court granted the motion of Gilmer, but denied the motion of Crawford, and from the judgment granting summary judgment in favor of Gilmer, appellant brings this appeal. While three points are asserted for reversal, all really relate to the same contention, viz., that the court erred in sustaining Gilmer's motion for summary judgment because there were genuine issues of fact to be determined by a jury. The depositions reflect that on the day in question, Tackett first drove his car to Gilmer's headquarters, received instructions to go to Crawford's, then drove his automobile to that location, parked his car, drove the tractor to the Bostic farm and obtained the chisel plow. Gilmer was putting out fertilizer at the same time that Tackett was operating the tractor but there was no contact between the two men, and Tackett testified that he did not see Gilmer at all. In explaining the work arrangement with Crawford, Gilmer stated, "Maybe some of us don't have enough equipment and we would combine it and carry on the work, and in the Spring and Fall we will swap work. He will help me put my crops in and I will help him put his in."

He said that he and Crawford had followed this practice since 1968 or 1969. The record further reveals:

"Q. When you and Mr. Crawford make arrangements to either exchange equipment or labor, do you work out some way satisfactory to satisfy each other?

A. I believe the way we have been doing this—I am farming about twice as much land and have twice as much equipment. We will cut my rice and then his. That is the way we did. *** I pay my labor and he pays his."

Tackett, a general employee for farm labor, was paid $10.00 per day by Gilmer.

Crawford agreed with Gilmer concerning the manner of operation, and said the practice of swapping work had been most satisfactory. "When he got his planted, he was happy, and when I got mine planted, I was happy." He said that he could not afford to hire the labor necessary during planting and harvesting time, although he and his sons could handle the work between those times.

On the day of the accident, Tackett went to work under the direction of Crawford, who hooked the chisel plow to the tractor. Crawford said that he gave no instructions to Tackett as the latter knew how to handle the tractor.[1]

Appellant insists that Gilmer and Crawford were engaged in a joint venture farming operation, and it is asserted that to constitute a joint venture, it was only necessary that both participants have a community of interest in the object and purpose of the undertaking, and each have an equal right to share in the control. In support of this definition, appellant cites *Reed* v. *Humphreys,* 237 Ark. 315, 373 S.W. 2d 580; *Woodard* v. *Holiday,* 235 Ark. 744, 361 S.W. 2d 744; and AMI Instruction 712. The cases cited deal with automobile accidents, and likewise, the AMI Instruction deals with motor vehicles, aircraft and boats.

It is recognized by appellant that this court, with regard to a business enterprise, may well say that a third element must be present, i.e., *an agreement* expressed or implied for the sharing of profits. And we have so held. In *State, ex rel. Attorney General,* v. *Gus Blass Company,* 193 Ark. 1159, 105 S.W. 2d 853, we said:

"To constitute a joint adventure, there must be the elements of a partnership. As between the parties themselves there must have been an intention to form a partnership as expressed in the contract or gathered from acts of the parties and circumstances which may interpret such agreement. As between themselves or third parties, 'there are certain requisites necessary

---

[1]Tackett stated that the tractor was similar to one he drove for Gilmer, but being a different model, was operated a little differently. Stopping the tractor was a little different, Tackett testifying, "I said, 'How do you kill it?' and he [Crawford] said, 'Pull the lever plumb up and out', but you will forget things."

before the law will in any event regard the relationship as that of partners. The requisites of a partnership are that the parties must have joined together to carry on a trade or adventure for their common benefit, each contributing property or services and having a community of interests in the profits.' *** 'As between the parties themselves, before it has been said that the relationship of partners has been created, it is essential that the parties themselves intended by the effect of their contract to form such a partnership business, and that they should have a common ownership and community of interest in the properties of the business, and they should share in some fixed proportion in the profits thereof only as profits of the business.' "

See also *United States* v. *Westmoreland Manganese Corporation, et al* (District Court E.D. Ark. N.D.) 134 F. Supp. 898.

There really is no need to discuss common purpose and equality of control, for it is clear that on the third phase, viz., that the parties must share in the profits, appellant's joint venture contention must fail. As to this phase, appellant in his brief states:

"Appellee Gilmer farms about 'twice' as much land and has 'twice' as much equipment as Appellee Roy Crawford and Crawford's labor is a necessary element for him to make a profit from his crop. Appellee Roy Crawford when asked if the farming arrangement agreed upon with Gilmer was of any financial value, Crawford stated that 'I could not afford it' if he should be required to hire his own labor and buy additional equipment. Is there any question that the working arrangement is necessary for Crawford to make a profit on his farming operation? The element of both Appellees having a community of interest in the profits is very clearly established. Crawford and Gilmer have if not by written contract but by an implied agreement farmed for several years in this fashion and both are dependent on the other in order to financially succeed. Should either Appellee fail in the consideration they offer to the implied contract of farming the entire 'joint venture' would fail.

"Appellant contends that to make a profit and show a financial gain satisfies any requirement of having a community of interests in the profits. Pooling income and equally sharing the profits is not the law. The facts are that the Appellees are in the farming business to each make a profit and neither could do so without the farming agreement entered into."

We cannot agree with the argument. The deposition testimony, in which the parties were closely and fully questioned, reveals that there was never any agreement between Crawford and Gilmer to share in each other's profits and the profits from each man's farming operation remained separate to that individual. While the swapping of work, according to both men, was mutually beneficial, there was no agreement to share in a fixed proportion of profits. The argument that the arrangement between the two created a joint enterprise because it allowed each to make a greater profit on his own farming operation has been held to be without merit. In the case of *Wells* v. *Whitaker*, 151 S.E. 2d 422, the Supreme Court of Appeals of Virginia had occasion to discuss this contention. In a well-written opinion by Mr. Justice I'Anson, the court said:

"Although there is no generally accepted definition of joint venture, it is said to exist 'when two or more persons combine in a joint business enterprise for their mutual benefit, with an express or implied understanding or agreement that they are to share in the profits or losses of the enterprise, and that each is to have a voice in its control or management.' [Citing cases].

"Joint ventures are not established by operation of law but by contracts, expressed or implied, between the parties. There is no evidence in the record to indicate any intention of the parties that Atlas was to exercise any voice in the control or management or to share in the profits or losses of the mixing plant's operation or that it did exercise control and share in the profits.

"Profits accruing from the movement of ammonium nitrate from the manufacturer, Atlas, to the processor,

Whitaker-Atlas, and then to the ultimate consumer cannot be said to be a sharing of the profits of the processor. The profit accruing must be joint and not several. Otherwise every person, firm or corporation who furnishes materials or supplies in connection with an enterprise might be termed joint venturers, whether or not they had any such intention."

The depositions of the parties very clearly reveal that there was no joint enterprise, and that being shown, appellant could not recover from Gilmer; accordingly, there was no fact question remaining to be passed on by the jury.

Affirmed.