Harry E. McDERMOTT, Jr. and
Mary Alice McDERMOTT *v.* Sam STRAUSS, Jr., Trustee;
Ralph COTHAM, Jr., Trustee;
LITTLE ROCK OB-GYN PENSION TRUST;
LITTLE ROCK OB-GYN PROFIT SHARING TRUST;
and Fred SELZ, Trustee

84-42                                                    678 S.W.2d 334

Supreme Court of Arkansas
Opinion delivered October 22, 1984
[Rehearing denied December 3, 1984.*]

*Purtle, J., would grant rehearing.

*Moses, McClellan & McDermott,* by: *Harry E. McDermott, III,* for appellants.

*House, Wallace & Jewell, P.A.,*by: *Phillip E. Dixon;* and *Smith, Smith & Duke,* by: *William David Duke,* for appellees.

P. A. HOLLINGSWORTH, Justice. Fred Selz and Floyd Fulkerson organized a joint venture to purchase and resell the 251 acre Clark farm for potential profits of $50,000 a year forever. The Clarks would sell for $414,000 with $120,000 down payment. In the spring of 1974, several parties were contacted about participating in this joint venture and the eventual amounts paid and percentages of ownership are as follows:

| Ralph Cotham: | $48,000 - 20% | (Trustee for C. W. Abrams, Nash Abrams, Frank Lyon, Gene Wallace, and O. H. Wilkerson) |
| Bill Floyd: | $24,000 - 10% | (Trustee for Little Rock OB-Gyn Pension Trust) |
| Sam Strauss: | $24,000 - 10% | (Trustee for Lee and Bruce Thalheimer) |
| Fred Selz: | $24,000 - 10% | (Trustee for his children, his rabbi, and Floyd Fulkerson) |

They are appellees in the instant case.

The remaining 50% was acquired by the appellant Harry McDermott. The appellees agreed to advance the down payment of $120,000 and appellant executed a promissory note for $60,000, which was his portion of the down payment, payable in five years at 8% to the appellees. Under the written joint venture agreement, McDermott was also to furnish front end money for engineering and road costs and was to be responsible for overseeing sales,

bookkeeping and other activities necessary for development of the property. Pursuant to the agreement, all funds received except sales commissions, would be used to pay the balance of the purchase price for the 251 acres and development expenses. Fifty percent of the profits remaining after these disbursements would be paid to McDermott and the other 50% to the appellees as their interests appear above. Fred Selz, as agent for the joint venture, purchased the farm and made the $120,000 down payment. At the closing Selz and Fulkerson received a commission for the sale in the amount of $41,415. Appellant failed to pay the promissory note when due and appellees brought suit on May 1, 1981. Appellant counterclaimed that the note was usurious or that he was entitled to recover for his services rendered and to recover for the commission obtained by Selz and Fulkerson.

The trial court found that Selz and Fulkerson earned the 10% commission and the payment of the commission was disclosed to the joint venturers or ratified by them; that appellant was not entitled to recover for his services and that the note was not usurious. The case is before us pursuant to Rule 29(1)(*l*).

We affirm.

We discuss the points for reversal in the order the appellants raised them.

The appellants ask us to find that the trial court erred in not holding that an undisclosed commission received by a joint venturer must be shared with the other members.

Selz and Fulkerson had an agreement with the seller of the property that they would receive a 10% commission for the sale. Selz and Fulkerson organized the joint venture to purchase then resell the land. At the closing, they received their commission. Appellant alleges that the receipt of this commission was a secret, except to Bill Floyd, and that 80% of the venturers did not know about it.

The law is clear that an undisclosed commission received by one joint venturer must be shared with the other

members of the joint venture. *Toney* v. *Haskins,* 7 Ark. App. 98, 644 S.W.2d 622 (1983); *Jones* v. *Kinney,* 146 Wis. 130, 131 N.W. 339 (1911). The question in this case is whether the commission was undisclosed.

Appellant states that he did not know of the commission until the first hearing in this cause. He asserts that he did not attend the closing, and he did not receive a copy of the closing statement which disclosed the payment of the commission. The offer and acceptance also contained a clause about the commission. Appellant signed the offer and acceptance as the buyer. Selz also signed as agent. Appellant contends that the clause was not on the offer and acceptance when he signed it and that it was typed in later. Assuming this were true, the record reflects the appellant had been in possession of the offer and acceptance with the clause long before the complaint was filed against him. He did not complain of this commission before then. The issue basically is one of credibility. We must yield to the trial court's discretion on that issue. The trier of facts is in a much better position to observe the demeanor of the witnesses and we will not set aside the court's findings of fact unless they are clearly erroneous. *Commercial Union Ins. Co.* v. *Sanders,* 272 Ark. 25, 611 S.W.2d 754 (1981). A.R. Civ. P. Rule 52 (a).

The second point raised by the appellants is that the trial court erroneously refused to allow appellants to introduce defendants' exhibits 18 and 19 into evidence.

Appellants' Exhibit 18 was a letter and an attached contract of sale to Frank Lyon concerning appellants' oral offer to sell Lyon joint venture property. Since the contract was unsigned, appellees objected to its introduction and the trial court sustained.

Appellants' Exhibit 19 was a contract of sale of joint venture property to Ralph Cotham based on appellants' oral offer. Again the contract was not signed; appellees objected and the trial court sustained.

Appellant testified that he thought both Lyon and

Cotham had accepted his offer. Appellant argues that the documents should have been admitted because they were relevant due to the fact that the offer and acceptance to buy the land was in dispute.

Unif. R. Evid. 901, Ark. Stat. Ann. § 28-1001 (Repl. 1979) requires the authentication or identification of a document as a condition precedent to admissibility. One means of authentication or identification is in Rule 901 (b)(1) which allows a document to be authenticated by the testimony of a witness with knowledge that a matter is what it is claimed to be.

This means of authentication was used by the appellants. Mr. McDermott testified as to the identity of these documents. As the person who drafted the documents and letter, he has the requisite knowledge of the documents. The fact that the party proponent supplied the authentication does not go to the admissibility although it may go to the weight of the evidence. *United Bilt Homes, Inc.* v. *Elder,* 272 Ark. 496, 615 S.W.2d 367 (1981). The exhibits should have been admitted.

In reviewing the record on this point, it appears that the lower court made the following finding:

> The Court finds that the individual joint venturers, including McDermott, agreed that each would have a right to reserve for future purchase a lot or lots. The testimony clearly shows that any payment for such lots would not be due until the entire project was completed and an election made at that time by the joint venturer to purchase or not purchase the particular lot.

However, appellants must demonstrate that a substantial right was affected by the trial court's excluding these exhibits. Unif. R. Evid. 103 (a), Ark. Stat. Ann. § 28-1001 (Repl. 1979). We cannot find that the trial court's error in excluding these exhibits was prejudicial to the appellants.

The appellants' third point is that there was no competent evidence before the lower court of an enforceable

oral agreement that allowed some joint venturers to ignore their written contracts of sale and some joint venturers an option at the end of the joint venture to purchase joint venture property.

Appellant sold lots to himself and some of the appellees. These contracts of sale stated that the interest and principal were to be paid out of the profits. When it became time to distribute the profits after the Clark note was paid, appellant deducted the principal and interest on the lots purchased by the joint venturers from their share of the distribution. Appellant applied his share of the distribution to his note payable to the appellees. The appellees objected to paying for the lots out of the profits. The trial court found:

> Payment for lots reserved by the members of the joint venture are not due at this time and will not be due until the election to purchase that lot by the members of the joint venture at such time as the project is completed.

Appellants' second and third points are intertwined and a review of the record reveals the following evidence was presented. Ralph Cotham understood that the members had the right to reserve the lots for future use. The payment could come out of the first profits or as agreed upon at the time of the election. This oral agreement was not contained in the contract. For that reason, Cotham did not sign the contract. As Frank Lyon's financial advisor, Cotham advised Lyon not to sign the contract, which he did not.

The joint venturers had at least two meetings where the purchase of lots was discussed before the execution of the contracts. In reviewing the record, there was testimony that there was an oral agreement to the effect that the members could reserve a lot for future purchase which, upon election, would be paid for out of the profits distributed when the joint venture dissolved. This testimony is not contrary to the written contracts in that they contain the clause "or as otherwise agreed." It is reasonable to assume this is referring to the oral agreement of the joint venturers. The contract

also states that the lots should be paid for out of the profits. The oral agreement does not conflict with this because the lots would be paid for out of the profits distributed upon dissolution of the venture.

There is evidence to support the trial judge's finding that there was an oral agreement to reserve lots. The members were not held to the terms of the contract but rather used these instruments to reserve the lots for future purchase. There is no prejudice by the erroneous exclusion of Defendant's Exhibits 18 and 19. The error is harmless because it was not prejudicial to the rights of the appellant. *Arkansas Public Service Commission* v. *Yelcot Tel. Co.,* 266 Ark. 365, 585 S.W.2d 362 (1979).

The fourth point raised by appellants is whether appellant was entitled to charge the joint venturers for his sales labor, bookkeeping labor, and other developmental expenses.

A joint venture is a relationship founded entirely upon contract. C.J.S., Vol. 48A, *Joint Ventures,* § 14. When a contract exists, that document will be controlling as to what was the parties' intention. The joint venture agreement states that appellant would be responsible for overseeing sales, bookkeeping, and other developmental expenses, and the funds received from the joint venture would be used to pay for these expenses. According to the agreement, appellant was not required to perform these duties himself, but to supervise. The group had agreed to pay someone else to perform the duties.

The general rule is that no member of a joint venture is entitled to any compensation for services rendered by him for the venture unless the contract so provides. C.J.S., Vol. 48A, *Joint Ventures,* § 35, p. 460. In this case, the contract did not so provide. The venturers only agreed to appellant overseeing these duties in exchange for the loan. There was no agreement for appellant to perform these duties himself. He volunteered his services to the venture.

Appellant also requests reimbursement for the money

he expended on shotgun shells, skeet, liquor and automobile expenses. These items were for the purpose of entertaining prospective buyers. The general rule is a party to a joint venture may, if in accord with the agreement, obtain reimbursement from the other parties for expenses incurred in the ordinary course of the enterprise. C.J.S., § 36. Appellant claims these items were part of the developmental expenses for which the appellees agreed to reimburse him.

The appellees contend that there is a proviso to the above stated rule. The expense must be one of the venture and not a contractual duty. The expenses the appellant wants to recover for are of a personal nature, and not for the benefit of the venture. The developmental expenses considered were the road and engineering costs. Appellant has been reimbursed for these expenses. Also, the appellant contracted to oversee these duties. Thus, he may have been obligated under the contract.

The contract has a clause which requires the appellees' consent to any expenditure appellant was to make as a condition precedent. Appellees contend that appellant did not have their consent or even ask for it as to the above claimed expenses.

The trial court's findings were:

that Mr. McDermott is not entitled to a management fee or to any commission for sales made by him. Mr. McDermott personally drafted the agreement and the note and the language of the agreement itself clearly provides that the venture is liable only for "sales commissions paid to others." Mr. McDermott was a party to this agreement. The testimony otherwise makes it clear that he was not entitled to any commission or management fee.

[F]rom the evidence the only expense items which the venture is required to reimburse McDermott for, both under the terms of the contract and the testimony to the court, and including development expenses or otherwise, are expenses for engineering and road construc-

tion, for which McDermott has been reimbursed.

We are of the opinion that the trial court did not commit error in this finding.

In their final point, the appellants ask us to find that the note was usurious. The appellees loaned the appellant the money to join the venture. At the time of the loan transaction, appellant agreed to oversee the sales, book-keeping and developmental expenses. Appellees loaned appellant $60,000 at an interest rate of 8%. Appellant argues that the value of his services, when added to the interest rate, causes the loan to be usurious.

At the outset, it should be noted that appellant cites no authority for this alleged error in his initial brief. Without any authority as support for his argument, the issue may not be reviewable. *Dixon v. State,* 260 Ark. 857, 545 S.W.2d 606 (1977).

This Court has held that a collateral contract entered into contemporaneously with a contract for lending and borrowing of money, where the collateral agreement is in itself lawful and made in good faith, does not invalidate the contract for the loan as usurious. This is true even if its effect might be to exact more from the borrower than the sum which would accrue to the lender from a legal interest rate. *Commercial Credit Plan v. Chandler,* 218 Ark. 966, 239 S.W.2d 1009 (1951).

Appellant claims his services are worth approximately $231,000 and $45,000 in expenses. Given the appellees have benefited from appellant's services and labor, if this benefit is more than the sum of the legal rate of interest, the note would not be usurious. There is no evidence that the contract was not made in good faith and the purpose of the contract is lawful. The requirements of the above case have been satisfied, thus, the note is not usurious.

If a collateral agreement is entered into by a debtor and creditor and the creditor is benefited from it, the loan is not usurious if there is no usuriouis intent. *Blalock v. Blalock,*

226 Ark. 75, 288 S.W.2d 327 (1956). There is no evidence of usurious intent in the case at bar. Even if there were, appellant drafted the note, thus, he should not be allowed to benefit from his own fraud. *Perry v. Shelby,* 196 Ark. 541, 118 S.W.2d 849 (1938).

Affirmed.

HAYS, J., not participating.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. I disagree with the majority on two issues. I believe that the 10% commission should have been shared with the other joint venturers and that all of the joint venturers should have been charged for the lots they purchased.

Although this Court has not directly ruled on the question of whether members of a joint venture may collect a commission at the expense of the other members, without full disclosure, the decided weight of authority favors rejection of a fee to a member or members of the joint venture at the expense of other members. *Toney v. Haskins,* 7 Ark. App. 98, 644 S.W.2d 622 (1983); *Humburq v. Lotz,* 4 Cal. App. 438, 88 P. 510 (1906). When appellant, who owned 50% of the joint venture, submitted the offer to purchase there was nothing in the offer to suggest payment of a commission to anyone. After the original seller agreed to the offer the real estate agents, part owners of the joint venture, wrote on the bottom of the offer and acceptance that a 10% commission would be paid. The majority opinion agrees that an undisclosed commission should not be allowed. I do not think the commission was disclosed. There was no evidence to indicate that the realtors who were joint venturers were to receive a commission. The commission of $41,415.00 was paid out of the $120,000.00 which the joint venturers paid at the time of the closing of the transaction. It is obvious that the joint venturers would have been required to pay out $41,415.00 less had the realtors not received a commission. The fact that several members later agreed to approve the

commission is not enough to bind the 50% ownership which never did ratify the commission.

The second point of my disagreement involves the purchase of lots by individual members of the joint venture. Appellant purchased 3 lots and several other members purchased one or more lots. The record reveals that appellant told the joint venturers that if they wanted to buy lots they could wait and pay for their lots out of profits which were expected to be received by the venturer. All of the joint venture members who purchased lots except two signed a contract which stated, "Interest accruing at the rate of 8%. Principal and interest payable from distribution of profits from joint venture, or as otherwise agreed." The instrument also contained the statement, "Buyer agreed that he is not relying on any oral representation of seller or his agents." The same contracts and statements were sent to Ralph Cotham and Frank Lyon. Neither party returned the contract. The contract described the particular lot which the parties were interested in. Thereafter annual statements were sent to all of the parties who had indicated an intent to purchase a lot. The financial statements identified each purchaser by name and showed the date of purchase, the price agreed to and the amount of interest accrue to date. The statement ending on December 31, 1979, clearly revealed the names of the purchasers and the amount of interest accrued until that time. Statements were sent for 1980 and 1981, which also revealed the purchasers' names and the amount of interest accrued. Not one of the joint venturers called to object to the amount charged against them on the statements.

On August 13, 1982, after the joint venture had paid its indebtedness, appellant caused the accountant to compute the distribution the investors would receive if the money on hand were used to pay off the lots they were charged with. The appellant, who purchased 3 joint venture lots, was charged with the same rate of interest as were the others. In accordance with this accounting procedure appellant sent a check to Ralph Cotham for $23,021.04; Sam Strauss, $11,510.52; $13,758.24 to Bill Floyd; and $16,710.20 to Fred Selz. Appellant did not receive a distribution but applied a

credit to his account which would reduce his note to the joint venture to a balance of $7,560.17. It was after these checks were received that the controversy arose.

I cannot understand where there was any evidence to support the trial court's findings that the debts of the members of the joint venture are not due in accordance with the terms of the purchase contract but will only be due if they elect to purchase these lots after the project is completed. All of the testimony clearly established that the members were to be charged interest from the date they agreed to purchase the lot. In fact to allow them to select a lot after the project is completed will be impossible for the reason that no lots will be available. Finally, appellant's exhibits 18 and 19, copies of the contracts sent to Cotham and Lyon, should have been admitted as relevant evidence on the question whether they had purchased the lots. This was prejudicial error so far as I am concerned.

I would affirm in part and reverse in part and remand the case to the trial court with directions to disallow the 10% commission and to charge all the purchasers of the lots with 8% interest from date of purchase, just as appellant charged himself.