Paul Marcus SLATON *v.* Karen Elizabeth JONES

CA 03-1116                                        195 S.W.3d 392

Court of Appeals of Arkansas
Opinion delivered October 13, 2004

*David L. Dunagin*, for appellant.

*Peel Law Firm, P.A.*, by: *Richard L. Peel* and *Jennifer L. Moder-sohn*, for appellee.

A NDREE LAYTON ROAF, Judge. Appellant Paul Slaton appeals the order of the Pope County Circuit Court finding a joint venture and dividing the business inventory between appellant and appellee Karen Jones, and imposing a constructive trust on the real property from which the businesses were conducted. Slaton argues that the trial court erred in finding a partnership between the parties and in imposing a constructive trust on the real property. We find no error and affirm.

Appellant and appellee cohabited for approximately twenty-six years but never married. During that time, the parties operated separate businesses out of the same location, known as the Emporium. The relationship ended when appellant changed the locks and asked appellee to leave. Appellee filed suit alleging conversion and seeking damages, dissolution of a partnership, replevin of her personal property, and the imposition of a constructive trust on the real property, titled in appellant's name, from which the businesses were conducted. Appellant failed to answer the complaint.

Appellee testified that she and appellant met and went into business in the mid-1970s. She stated that appellant started his business, Paul's Rare Coins and Books, as a small coin shop in the corner of another retail store. She stated that, after appellant moved to another location and changed the business name to Emporium, she started buying and selling jewelry through appellant's business, before she technically started her own business, Plantation Antiques & Jewelry (Plantation), in 1987. She stated that she received the money from the jewelry sales while appellant received the money from his items. She stated that the parties were not partners in business and that she always wanted everything to be separate. Appellee denied that money from Emporium was used to start her business. She stated that the 1987 inventory of $33,000 came from her previous sales, which were then applied back into the business. Appellee stated that she had her own money and occasionally received some from her father but that appellant never gave her any money.

Appellee testified that, for the first two or three years the parties were together, money for bills came from the sale of books and then she began depositing money into Emporium's purchase account to cover the bills. She stated that she paid the bills, although appellant may have paid a few bills. She described the account as a joint account. She stated that, if there was not enough money in the account, she deposited money from jewelry she sold. She also testified that she made jewelry purchases from that account in order to build appellant's standing in the jewelry trade. Appellee also admitted that appellant may have deposited funds from items he sold into this account but that this was not usually done because appellant had a separate account. She said that, after book sales declined, approximately ten years ago, there were not enough book sales to cover expenses and that she had to contribute funds to cover the cost of the books.

Appellee testified that, some years prior to trial, she discovered that, although she had believed the parties were purchasing the building together, appellant had actually purchased it and had it titled solely in his name. She stated further that, at that time, both parties were making the payments on the building.

Concerning the inventory in the building, appellee opined that she owned 95% of the jewelry and 70% of the antique furniture. She admitted that, although she owned a few sets of coins, approximately 95% to 98% of them belonged to appellant.

Mike Summers, a certified public accountant, testified that he had prepared appellee's tax returns for several years and that her returns included a schedule showing that Plantation Antiques & Jewelry was operated as a sole proprietorship. Summers stated that, if more than one person had owned the business, appellee would have filed partnership tax returns.

Patty Austin testified that she worked for the parties for approximately twenty years before she became employed as a clerk at another store. She testified that, although the general public assumed that the parties' businesses were owned together, they were actually operated as separate entities. Austin opined that appellee owned 70% of the merchandise that included the furniture and jewelry and that appellant owned 30%, and that this apportionment was maintained over the entire time of her employment. Austin stated that 85% of the jewelry belonged to appellee but that appellant limited his sales to coins, firearms, Civil War relics, and war relics in general. She stated that, while appellant had some jewelry and nice antique pieces, the coins were his mainstays. She also stated that appellee's jewelry business brought in the most money.

Austin testified that the parties placed different-colored tags on the merchandise to denote which item belonged to whom and that each party kept the money from the sales of his or her inventory. She testified that the parties maintained separate accounts. She stated that there was one cash register but that, if a specific item belonging to one party or the other was sold, the money was not placed in the register but was set aside and disbursed to the proper party. She stated that the money from the sales of books and magazines was placed into the cash register.

Austin testified that appellee wrote checks from and handled the books for an account that contained only appellant's money. She also testified that appellee paid the utility bills mostly out of

her separate account. She stated that appellant made arrangements for the purchase of the building several years prior to trial but that appellee usually made the monthly mortgage payment from the Emporium account.

Appellant stated that he owned a business known as the Emporium that sold jewelry, rare coins, and small antiques. He said that he started the business under the name of Paul's Rare Coins and Books, which changed locations as it grew. He described the jewelry as antique jewelry, coin rings, and diamond rings that he bought at gun or coin shows and at flea markets. Appellant stated that appellee owned only a few items of jewelry that she brought with her from California. He denied knowing that appellee had been selling jewelry for which she claimed ownership, stating that he had purchased *all* of the jewelry inventory. Appellant stated that, although appellee did have some minimal expertise in jewelry, hers was not as great as his own.

According to appellant, the parties started Plantation together using the money from Emporium. He testified that the assets were shifted from Emporium to Plantation but that he was the owner of 85% to 90% of the assets because the purchase money came from items he owned prior to the relationship between the parties. He later stated that 95% of the inventory was his and that he had provided all of the funds to purchase the antiques and furniture, the jewelry, and the coins. He denied that appellee used money from her personal account to pay bills on behalf of the store and stated that some of the profits from Emporium were used to pay bills. He denied that appellee had her separate business and asserted that he totally owned Plantation. He stated that, on the advice of a tax attorney, he and appellee had verbally agreed that she would claim Plantation for tax purposes.

Concerning the purchase of the real estate, appellant testified that he never told appellee that he would be the sole purchaser. He said that he told her that "we were purchasing it . . . and we were not going to be paying rent any more." He admitted that appellee was a party to the negotiations for the purchase of the real estate. He stated that he made all of the payments from his funds and that appellee did not make any payments from her funds. He stated that the money for the improvements to the real estate came from Emporium's profits, his inheritances, and from the proceeds of the sale of a jointly-owned home in Atkins. Appellant also stated that Emporium and the business property were solely in his name because of the parties'

receiving legal notices from the City of Atkins regarding acts of vandalism on another piece of property.

The trial court found that the parties were engaged in a joint venture by operating separate businesses from a common location and ordered the inventory located at the business sold and the proceeds divided unequally, 70% to appellee and 30% to appellant. The court also ordered the imposition of a constructive trust on the business real property, with the real property to be sold and the proceeds divided equally. The trial court also awarded each party his or her separate business and certain specified personal property. This appeal followed.

Appellant raises two points on appeal: that the trial court erred in the distribution of the partnership property and that the trial court erred in imposing a constructive trust on the real property.

In reviewing a circuit court's exercise of its equity jurisdiction, we consider the evidence *de novo*, but we will not reverse a trial judge's findings unless they are clearly erroneous or clearly against the preponderance of the evidence. *Ward v. Davis*, 298 Ark. 48, 765 S.W.2d 4 (1989). We give due deference to the superior position of the trial judge to view and judge the credibility of the witnesses. *Arkansas Presbytery v. Hudson*, 344 Ark. 332, 40 S.W.3d 301 (2001). A finding is clearly erroneous when, even though there is evidence to support it, the appellate court is left with the definite and firm conviction that a mistake has been made. *Bendinger v. Marshalltown Trowell Co.*, 338 Ark. 410, 994 S.W.2d 468 (1999).

For his first point, appellant argues that the trial court erred in the division of the partnership property. Appellant's argument is that appellee failed to prove the elements of a partnership set out in the Uniform Partnership Act, codified at Ark. Code Ann. §§ 4-42-201, -202 (Repl. 2001), and, therefore, she cannot claim the real property as a partnership asset. However, the trial court did not find that a partnership existed between the parties; rather, the trial court found that the parties operated separate businesses in a single location in a joint venture. We first note that the supreme court has held that what is now Ark. Code Ann. § 4-42-202 is not controlling in determining whether there is a joint venture. *See Gammill v. Gammill*, 256 Ark. 671, 510 S.W.2d 66 (1974). To find that a joint enterprise existed, Arkansas

law requires only a showing of (1) a common object and purpose of the undertaking and (2) an equal right to direct and govern the movements and conduct of each other in respect to the common object and purpose of the undertaking. *Lovell v. Brock*, 330 Ark. 206, 952 S.W.2d 161 (1997); *RLI Ins. Co. v. Coe*, 306 Ark. 337, 813 S.W.2d 783 (1991). The existence of a joint enterprise is ordinarily a question for the fact-finder. *RLI Ins. Co. v. Coe, supra.*

■ Appellant's main complaint appears to be that the finding of a joint venture allowed appellee to be awarded an interest in the real property. It does not appear that he is otherwise challenging the division of the personal property or the fact that it was an unequal division in favor of appellee. Appellant's brief discusses the requirements for a partnership but does not discuss the distinctions between a partnership and a joint venture. A partnership is defined as "an association of two (2) or more persons to carry on as *co-owners a business for profit.*" Ark. Code. Ann. § 4-42-201(1) (Repl. 2001) (emphasis added). The primary test to determine whether there was a partnership between the parties is their actual intent to form and operate a partnership. *Boeckmann v. Mitchell*, 322 Ark. 198, 909 S.W.2d 308 (1995). Here, appellee testified that she did not intend to become business partners with appellant.

■ ■ A joint venture exists when there is a special combination of two or more persons jointly seeking a profit in some specific venture without actual partnership or corporate designation. *Fulton v. Fulton*, 528 S.W.2d 146 (Mo. Ct. App. 1975). It has also been defined as "an association of persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill, and knowledge." *Id.* at 155 (citation omitted). A joint venture is a relationship founded entirely upon contract, and, when a contract exists, that document will be controlling as to what was the parties' intention. *McDermott v. Strauss*, 283 Ark. 444, 678 S.W.2d 334 (1984). Joint ventures and partnerships are governed by the same basic legal principles, *Denny v. Guyton*, 327 Mo. 1030, 40 S.W.2d 562 (1931); *Boles v. Akers*, 116 Okla. 266, 244 P. 182 (1925), but there are important differences, including the ad hoc nature of joint ventures, or their concern with a single transaction or isolated enterprise, plus the fact that loss-sharing is not as essential to joint ventures as it may be for partnerships. *See Hults v. Tillman*, 480 So. 2d 1134 (Miss. 1985).

In *National Bank of Commerce v. HCA Health Services of Midwest, Inc.*, 304 Ark. 55, 800 S.W.2d 694 (1990), the supreme court, citing *State ex rel. Attorney General v. Gus Blass Co.*, 193 Ark. 1159, 105 S.W.2d 853 (1937), stated that a joint venture must have the elements of a partnership. Earlier, the supreme court had clarified its holding in *Gus Blass* by stating:

> We did not say in the *Gus Blass Co.* case that a joint venture must contain every element of a partnership, for then there would be no difference between the two. What we said was that a joint adventure is "in the nature of a partnership of a limited character," and we then examined the agreement in question to determine whether it was sufficiently similar to a partnership to constitute a joint adventure.

*Johnson v. Lion Oil Co.*, 216 Ark. 736, 739, 227 S.W.2d 162, 164 (1950); *see also Texas Oil & Gas Corp. v. Hawkins Oil & Gas, Inc.*, 282 Ark. 268, 668 S.W.2d 16 (1984).

■ In *Tackett v. Gilmer*, 254 Ark. 689, 496 S.W.2d 368 (1973), the supreme court added a third element for the determination of whether a business enterprise constituted a joint venture, an expressed or implied understanding that the participants are to share in the profits or losses of the venture. *See also First Nat'l Bank v. Adair*, 42 Ark. App. 84, 854 S.W.2d 358 (1993) (citing *Tackett, supra*). However, the parties' sharing of the net profits of an undertaking is also prima facie evidence that they were partners, unless the money received was paid as wages. Ark. Code Ann. § 4-42-202(4)(b) (Repl. 2001). The buying of chattels on joint account for sale at a profit is a common form of joint venture. *Wiseman v. Graham*, 178 Ark. 458, 10 S.W.2d 892 (1928); *Lobsitz v. E. Lissberger Co.*, 168 App. Div. 840, 154 N.Y.S. 556 (1915); *C.C. Roddy, Inc. v. Carlisle*, 391 S.W.2d 765, 768 (Tex. Ct. Civ. App. 1965).

■ In the present case, there was testimony that both parties bought and sold merchandise for the businesses and that both parties contributed funds for the payment of their common business expenses. Appellant relies on testimony by appellee, given at the hearing for temporary injunctive relief, prior to the trial on the merits, in which she stated that she does not know if she had an interest in appellant's business. He takes appellee's statement out of context by not indicating that it refers to the time period of 1975

or 1976 instead of when appellee started her own business in the late 1980s. This point is essentially a challenge to the trial court's credibility determinations, and we cannot say that the trial court's finding of a joint venture was clearly erroneous. We affirm on this point.

In appellant's second point, he argues that the trial court erred in imposing a constructive trust on the real property from which the parties operated their businesses. The argument is essentially that the trial court erred in finding that appellee had presented sufficient facts to justify the imposition of a constructive trust.

It is well established that a constructive trust arises contrary to intention and *in invitum* (against an unwilling party) against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy. *See Scollard v. Scollard*, 329 Ark. 83, 947 S.W.2d 345 (1997). In *Bramlett v. Selman*, 268 Ark. 457, 597 S.W.2d 80 (1980), our supreme court held that persons engaging in non-marital involvements may be determined to occupy a confidential relationship sufficient to support a constructive trust where the other elements are present.

In *Nichols v. Wray*, 325 Ark. 326, 925 S.W.2d 785 (1996), the supreme court set forth the requirements necessary to impose a constructive trust:

> To impose a constructive trust, there must be full, clear, and convincing evidence leaving no doubt with respect to the necessary facts, and the burden is especially great when a title to real estate is sought to be overturned by parol evidence. The test on review is not whether the court is convinced that there is clear and convincing evidence to support the chancellor's finding but whether it can say the chancellor's finding is clearly erroneous, and we defer to the superior position of the chancellor to evaluate the evidence. A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.

*Id.* at 333, 925 S.W.2d at 789 (citations omitted). The trial court in this case based its imposition of the constructive trust on its findings

that the parties were in a confidential relationship; that appellee believed that the parties were purchasing the property together; that appellee paid the mortgage payments and appellant did not deny this fact;[1] and that the proceeds from the sale of joint property were used to purchase the property. Appellant does not dispute the fact that the parties had a confidential relationship. He does point to evidence that he believes justifies not imposing a constructive trust. He also points to what he sees as inconsistencies in appellee's testimony. However, the trial judge specifically stated that its findings on the constructive trust issue were based upon the credibility of the witnesses, and we are bound by those determinations unless we find them to be clearly erroneous. *Id.* We cannot say that they are clearly erroneous based upon the record before us.

Affirmed.

GRIFFEN and NEAL, JJ., agree.

---

[1] Appellant did deny that appellee made the mortgage payments on the business property, stating that he made all of the payments from his monies and that appellee did not make any payments from her funds.