In re Dudley R. WEBB, Jr., and
Peggy J. Webb, Debtors.

M. Randy Rice, Trustee, Plaintiff

v.

Carlton Farms, LLC, Bank of England,
and U.S. Dept. of Agriculture,
Defendants.

Bankruptcy No. 4:12–bk–10768.
Adversary No. 4:12–ap–1044.

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

July 3, 2012.

Basil V. Hicks, Jr., Attorney at Law, N. Little Rock, AR, for Debtors.

Kevin P. Keech, Keech Law Firm, PA, N. Little Rock, AR, Randy Rice, Rice & Associates, Little Rock, AR, for Plaintiff.

Johnathan Dwaine Horton, Wright, Lindsey & Jennings, LLP, Frank Stewart Headlee, Hopkins Law Firm, Lindsey Mitcham Lorence, U.S. Attorney's Office, Eastern District Of Arkansas, Little Rock, AR, Eric H. Holder, Jr., United States Attorney General, U.S. Department of Justice, Washington, DC, for Defendants.

### ORDER GRANTING INJUNCTION

AUDREY R. EVANS, Bankruptcy Judge.

On April 11, 2012, the Court held a hearing on the Plaintiff's *Motion for Temporary Restraining Order, Preliminary Injunction, and Emergency Hearing* (the **"TRO Motion"**). The TRO Motion, filed by the Chapter 7 Trustee, Randy Rice (the **"Trustee"**), pursuant to Federal Rule of Bankruptcy Procedure 7065, sought a temporary restraining order and preliminary injunction to prevent separate Defendant Bank of England (the **"Bank"**) from exercising control over and selling certain grain. On April 2, 2012, the Court entered a temporary restraining order and preliminary injunction and set the matter for an emergency hearing to be held April 11, 2012.

At the April 11, 2012 hearing, Kevin Keech appeared on behalf of the Trustee; Gregory Hopkins and Stewart Headlee appeared on behalf of the Bank of England; Johnathan Horton and Kimberly Tucker appeared on behalf of separate Defendant Carlton Farms; and Lindsey Lorence, with the U.S. Attorney's office, appeared on behalf of the United States Department of Agriculture (**"USDA"**). After hearing testimony and receiving documentary evidence, the Court entered a permanent injunction enjoining the Bank from taking

control over the Debtor's assets including property the Bank asserted was held by the Debtors' joint venture. The Court orally ruled that the Trustee may immediately sell the grain at issue and hold the proceeds from the sale in an estate account, with the various parties' rights to those proceeds to be determined at a later date. This Order serves to document the Court's oral ruling, and constitutes its findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

Two questions were presented by this case. First, whether certain property—specifically, grain held in the name of a joint venture—belonged to the estate, and second, if the grain belonged to the estate, whether an injunction should be granted to protect the grain. To answer the first question, the Court had to decide whether a "joint venture" created by and entered into between each of the individual Debtors in this case (who are also husband and wife), is in fact a separate entity, specifically, a partnership. Because the Court found that the joint venture was not a separate entity and the grain belonged to the Debtor's estate, and that the estate would suffer irreparable harm if it were not sold immediately, the Court entered an injunction preventing the Bank from exercising control over the grain.

### Joint Venture as a General Partnership or Other Separate Legal Entity

 While joint ventures are very similar to general partnerships, which are created by two individuals to carry on a business, they are not necessarily one and the same. Uniform Law Comment 2 to Ark.Code Ann. § 4–46–202, titled "Formation of partnership," provides that "[r]elationships that are called 'joint ventures' are partnerships if they otherwise fit the definition of a partnership. An association is not classified as a partnership, however,

simply because it is called a 'joint venture.'" The Arkansas Court of Appeals has described the nature of a joint venture as follows:

> A joint venture is a relationship founded entirely upon contract, and, when a contract exists, that document will be controlling as to what was the parties' intention. *McDermott v. Strauss*, 283 Ark. 444, 678 S.W.2d 334 (1984). Joint ventures and partnerships are governed by the same basic legal principles, *Denny v. Guyton*, 327 Mo. 1030, 40 S.W.2d 562 (1931); *Boles v. Akers*, 116 Okla. 266, 244 P. 182 (1925), but there are important differences, including the ad hoc nature of joint ventures, or their concern with a single transaction or isolated enterprise, plus the fact that loss-sharing is not as essential to joint ventures as it may be for partnerships. *See Hults v. Tillman*, 480 So.2d 1134 (Miss. 1985).

*Slaton v. Jones*, 88 Ark.App. 140, 148–49, 195 S.W.3d 392, 397 (Ark.App.2004). *See also* 46 Am.Jur.2d *Joint Ventures* § 9 (2012) ("A joint venture status is created by either an express or implied contract and depends on the mutual intent of the parties."). Notwithstanding the similarity between partnerships and joint ventures,

> the courts do not treat a joint venture as in all respects identical with a partnership, as they are separate and distinct legal relationships. A joint venture is generally a less formal relationship than a partnership. Also, a joint venture is not a legal entity separate from the participants in the venture as a partnership is, unless, of course, the attributes of the joint venture are such that the venture is in actuality a partnership.

48A C.J.S. *Joint Ventures* § 3 (2012). *See also In re Roxy Roller Rink Joint Venture*, 67 B.R. 474, 477 (Bankr.S.D.N.Y. 1985) ("'[T]he obligation of joint venturers

may be equated with that of general partners, and the rules of law governing partnerships, if relevant, apply to a joint venture. However, the two relationships are not identical and there can be a joint venture without the existence of a legal partnership.'") (quoting 16 New York Jurisprudence 2d, *Business Relationships,* § 1578 at 254–55). In other words, a joint venture is not necessarily a separate entity with a separate legal existence; it is a relationship between two parties which or may not amount to a partnership under partnership law.

■ In this case, there was evidence that the Debtors farmed under the name "Dudley R. Webb, Jr. Farms Joint Venture," since the name was used on various loan documents and leases, insurance documents, warehouse receipts, and a bank account. The Debtors executed a joint venture agreement establishing the joint venture on January 14, 2003, with each Debtor holding a 50% interest. Paragraph 13 specifically states: "Nothing herein shall be construed to create a partnership of any kind."[1] Debtor Dudley Webb testified that there was no difference between the joint venture and himself; rather, they were "one and the same." He explained that the purpose of the joint venture and the reason it was created was to ensure that his wife had an equal interest in the farming operation and not just an interest as his spouse. He explained he also wanted to help her establish credit. The joint venture did not file its own tax returns as a partnership using Form 1065. Rather, all the farming equipment and income was listed on the Debtors' individual tax return, a Form 1040. The Debtors also listed assets which the Bank asserts belonged to the joint venture as their own assets on loan applications. There was no evidence the joint venture was registered as a separate entity with the Arkansas Secretary of State's office. There was no evidence it created separate balance sheets or inventories. There were no bills of sale transferring property from the Debtors to the joint venture when it was created. In sum, the Debtors did not intend to create a separate entity, and the joint venture established was merely a name, more akin to a sole proprietorship or a trade name, but not a separate entity.

Based on the evidence presented, the Court finds that in this case, the joint venture created by the Debtors is not a separate legal entity—it is not a general partnership (and it cannot be any other sort of limited liability entity as it was not organized under a limited liability statute and filed with the Secretary of State as required by Arkansas law). Accordingly, any property owned by the Debtors and listed in the name of their joint venture is owned by the Debtors individually.

### *Permanent Injunction*

At the April 11, 2012 hearing, the Court granted a permanent injunction to refrain the Bank from taking control over the Debtor's grain held in the name of the joint venture, and ordered that the Trustee could immediately sell the grain at issue and hold the proceeds from the sale in an estate account, with the various parties' rights to those proceeds to be determined at a later date.

■ Before granting permanent injunctive relief, the Court must weigh three factors: "(1) the threat of irreparable harm to the moving party; (2) the balance of harm between this harm and the harm suffered by the nonmoving party if the

---

**1.** The Court notes there appear to be two drafting errors in the Joint Venture Agreement. In Paragraph 6, that agreement refers to the joint venture as a "partnership" while in Paragraph 11, the joint venture is referred to as a "firm"; all other references to the joint venture are labeled "joint venture."

injunction is granted; and (3) the public interest." *Taylor Corp. v. Four Seasons Greetings, LLC,* 403 F.3d 958, 967 (8th Cir.2005) (citing *Bank One v. Guttau,* 190 F.3d 844, 847 (8th Cir.1999)). "The standard for granting a permanent injunction is essentially the same as for a preliminary injunction, except that to obtain a permanent injunction the movant must attain success on the merits." *Bank One v. Guttau,* 190 F.3d at 847 (citing *Amoco Prod. Co. v. Village of Gambell, Alaska,* 480 U.S. 531, 546 n. 12, 107 S.Ct. 1396, 94 L.Ed.2d 542 (1987)).

■ The Trustee prevailed on the issue of whether the grain at issue is estate property because the Court found that even if the grain is held by a joint venture, the joint venture is not a separate entity. The Trustee proved that irreparable harm would occur to this estate if an injunction were not entered—in part, because the Bank intended to proceed against this property before obtaining relief from the stay after concluding on its own that the stay did not apply. The Trustee also established that the estate would suffer irreparable harm if he could not immediately sell the grain at issue (due to the nature of the grain and the possibility of spoilation, possible lack of insurance, and other problems). Neither Carlton Farms nor the USDA have any objection to the sale being held by the Trustee. The Trustee is experienced in such property sales, routinely conducts sales, and holds the proceeds pending a determination of priority at a later date. As such, the harm to this bankruptcy estate far outweighed the potential harm to the Bank even if the Bank is ultimately entitled to the proceeds as a fully secured creditor. Finally, and for the same reasons, enjoining the Bank from taking control over this property is in the public interest. Whether a joint venture is a separate entity is not an automatic determination; it is a judge's determination to make, not the Bank's, particularly under facts such as these: the Debtor included the grain as an asset on its schedules; the bank filed a motion for relief from stay to sell the grain; and then, while a hearing on the motion was pending, the trustee received a letter and an email informing him that the bank was going to sell the grain before the Court could rule on its motion.[2] Under these circumstances, it is in the public's interest that this injunction be entered. Allowing creditors to make their own determinations as to what belongs to an estate would result in the type of uncertainty and chaos the Bankruptcy Code is designed to prevent.

For the reasons stated herein, it is hereby

**ORDERED** that the TRO Motion filed by the Trustee on April 2, 2012, and heard and decided by the Court on April 11, 2012, is **GRANTED.**

**IT IS SO ORDERED.**

---

**2.** The Bank's motion for relief from stay was scheduled to be heard on April 26, 2012. The Bank's counsel sent the Trustee an email on March 29, 2012, and a letter on March 31, 2012, requesting that the Trustee immediately provide counsel with any factual or legal authority that the Joint Venture's assets are property of the bankruptcy estate. The letter went on to state that if the Trustee did not respond to that request by April 2, 2012, at noon, the bank would proceed to sell the grain and might assert claims against the Trustee for delaying the sale. On April 2, 2012, the Bank issued a Notice of Disposition of Collateral stating that the grain would be sold on April 9, 2012. The Trustee filed the TRO Motion on April 2, 2012, and the Bank amended its motion for relief from stay on April 6, 2012, asserting that the debtors did not own the grain at issue and it was therefore not subject to the automatic stay.