**In re ROXY ROLLER RINK JOINT VENTURE, Debtor.**

**Bankruptcy No. 84 B 11469 (PBA).**

United States Bankruptcy Court, S.D. New York.

May 3, 1985.

Sheber Pomerantz Slotnik & Hamburg, New York City, for Natoma-Roxy Corp.

Baron & Gleich, Great Neck, N.Y., for Twins Roller Corp.

MEMORANDUM DECISION AND ORDER SUSTAINING STANDING OF PETITIONING PARTNER

PRUDENCE B. ABRAM, Bankruptcy Judge.

On October 17, 1984, Natoma-Roxy Corp. ("Natoma") filed an involuntary Chapter 11 petition against Roxy Roller Rink Joint Venture ("Roxy" or the "Debtor"). Natoma alleged that it is one of the general partners of Roxy, a joint venture that operates a roller rink and disco at 515 West 18th Street, New York City. Twins Roller Corp. ("Twins") is alleged to be the other general partner. The petition alleges that the Debtor is generally not paying its debts as they become due. An amended involuntary petition was filed on October 30, which deleted certain allegations not material to the present decision.

Twins filed an answer denying that either Natoma or Twins were general partners of Roxy. As an affirmative defense, Twins alleges that Roxy has the attributes of a corporation as defined in Bankruptcy Code § 101(8) and that therefore the filing of the petition by Natoma is not provided for in the Code.[1]

Natoma moved for summary judgment dismissing Twins' affirmative defenses.[2] In support of its motion, Natoma has submitted a copy of the August 24, 1981 agreement between Twins and Natoma pursuant to which Roxy was formed.

For the reasons which follow, the court has concluded that Roxy is a species of

---

1. Twins also alleged as a second affirmative defense that the petition was not properly signed or authorized on behalf of Natoma. George Milman stated in the petition that he signed the petition as an authorized agent of Natoma. That is sufficient as a corporate resolution is not required to be filed by a petitioning general partner. See 2 Collier on Bankruptcy (15th Ed.) ¶ 303.15[11]. Furthermore, Michael Butler, who is the sole stockholder, director and president of Natoma, indisputably ratified the filing in his affidavit in support of the motion seeking dismissal of Twins' affirmative defenses. Thus, Twins' affirmative defense is insufficient as a matter of law.

2. Natoma's papers purport to be joined in by Roxy. However, Roxy's participation in the motion adds nothing as both Natoma and Twins agree this petition must be treated as an involuntary one, not a voluntary one.

partnership, that Natoma is a general partner of Roxy and that Natoma has standing to file an involuntary petition against Roxy under Code § 303(b)(3)(A). While finding the standing requirements satisfied, the court is unable to enter an order for relief at this time because Twins has denied knowledge or information sufficient to form a belief as to the allegation that Roxy is not generally paying its debts as they become due. A hearing has therefore been fixed on that issue for May 14, 1985.

Bankruptcy Code § 303(b) provides in pertinent part as follows:

"(b) An involuntary case against a person [3] is commenced by the filing with the bankruptcy court of a petition under Chapter 7 or 11 of this title—

\* \* \* \* \* \*

"(3) if such person is a partnership—
"(A) by fewer than all of the general partners in such partnership \* \* \* \*"

The term partnership is not defined in the Bankruptcy Code. Partnership can be defined only through resort to state law and through review of the defined term "corporation". The term "corporation" is defined in § 101(8) as follows:

"(8) 'Corporation'—
(A) includes—
(i) association having a power of privilege that a private corporation, but not an individual or a partnership possesses;
(ii) partnership association organized under a law that makes only the capital subscribed responsible for the debts of such association;
(iii) joint-stock company;
(iv) unincorporated company or association; or
(v) business trust; but
(B) does not include limited partnership."

It is apparent that both general and limited partnerships are excluded from the definition of corporation. See 2 Collier on Bankruptcy (15th Ed.) ¶ 101.08.

**3.** Code § 101(33) states "'person' includes individual, partnership, and corporation, but does not include governmental unit."

Only with the adoption of the Bankruptcy Code in 1978 did it become possible for a general partner not also asserting a claim as a creditor to file an involuntary petition against a partnership. See generally 1A Collier on Bankruptcy (14th Ed. 1976), ¶ 5.11 as to former Bankruptcy At. Such a filing may be made by fewer than all the general partners notwithstanding a contrary agreement between the partners or State or local law. See 124 Cong.Rec. H 11, 091 (Sept. 28, 1978), S 17,407 (Oct. 6, 1978). It has been said that "A general partner may want to file a petition on behalf of the partnership when he believes the other general partners committed acts detrimental to the partnership and its creditors which may result in personal liability on the part of the filing general partner." 2 Collier on Bankruptcy (15th Ed.) ¶ 303.09 at 303–42.

The essence of Twins' argument that Roxy is a corporation within the meaning of Code § 101(8) lies in Twins' assertion that the essential difference between corporations and partnerships is whether or not the entity has limited liability. See Twins' Brief at 2.

"There is no doubt or dispute that both of the Venturers, Natoma Roxy, Inc. and Twins Roller Corp., were formed for the sole purpose of entering into this Joint Venture. The *intent* of the promoters, shareholders, officers and directors of each of the Venturers was to enter into the transaction of the ROXY ROLLER RINK JOINT VENTURE with the *limited liability* afforded by doing business in the corporate form afforded by the Laws of the State of New York—limited by whatever capital contributions the individuals wished or agreed to make to their respective corporations to fund the operation of the Roxy Roller Rink." Twins' Brief at 5.

Twins' argument is unpersuasive. The liability of any general partner is always

limited in the real world sense by the amount of its assets. Moreover, it is not unusual for a general partner to be a corporation and many limited partnerships have a corporation as their sole general partner. Moreover, it is not this real world limit on liability that is legally important. It is the theoretical legal exposure of a general partner that must be of concern. "When personal liability co-exists with capital liability, however, such body will not be deemed a corporation for purposes of Section 101(8)." 2 Collier on Bankruptcy (15th Ed.) ¶ 101.08 at 101–20.

The August 24 agreement is clearly identified as a "Joint Venture Agreement." It recites the parties' desire to enter into a joint venture and identifies Roxy as that venture. The agreement specifies the parties' ownership interest in the venture, its place of business, management, title to property, books and records and duration (stated to be until December 31, 2011). The agreement specifies the parties' cash contributions and states that

> "each party shall be liable for, and agrees to pay into the Venture promptly when due, his ownership interest percentage share of all costs and expenses of whatsoever kind or nature incurred by the Venture in connection with its operation of business affairs, to the extent said costs or expenses are not covered by the income and available cash resources of the Venture * * * " Agreement ¶ 9(c).

The agreement makes provisions for distributions during the life of the venture, the tax treatment of profits and losses, dissolution or termination of the venture and distribution on dissolution. Contribution and indemnification are provided for. Provisions are contained relative to the transfers of the interest of a venturer and the right of a venturer to purchase the interest of the other venturers. There is a default clause.

Among the miscellaneous provisions are the following:

> "21.  * * *
>
> "(b) This Agreement shall be construed in accordance with the laws of the State of New York. The laws relating to general partnerships shall govern this Venture, unless expressly indicated otherwise herein. All parties shall have each and all of the rights, remedies, powers, duties and obligations afforded them, both at law and at equity.
>
> *     *     *     *     *     *
>
> "(d) The parties hereto agree that this Agreement is confined to the operation of this Venture, and nothing contained in this Agreement shall be construed to create a general partnership among the parties nor authorize any party to bind the others in any matter not connected with the Venture." [4]

There is thus a clear written agreement in which the parties create a joint venture. No discerning of intent from conduct or otherwise is called for. Compare *In re York Furniture Company, Inc.*, 32 B.R. 211, 214 (Bankr.S.D.N.Y.1983) ("Absent an express contract, courts have inferred a joint venture agreement from the parties' conduct.")

Natoma and Twins expressly agreed that laws relating to general partnerships would govern Roxy. Code § 303(b)(3) is such a law.[5] It is a right or remedy afforded a party to the agreement, in this instance Natoma, at law or equity.

---

**4.** The non-creation clause present in ¶ 21(d) is not inconsistent with the court's treatment of Roxy as a general partnership under Code § 303(b). This not uncommon provision operates to preclude the venturers from binding or obligating one another vis-a-vis third parties beyond the scope of the venture, as might otherwise be possible between general partners. Thus this provision in ¶ 21(d) only serves to bring actions taken by the parties unconnected to the venture outside of the general applicability of partnership law to this venture.

**5.** Although it might be argued that the laws referred to in ¶ 21(b) of the Joint Venture Agreement are only those of the State of New York, that reading is not compelled and indeed is contra-indicted when one considers the significance of one other Federal law, the Internal Revenue Code, to Roxy and the venturers.

If that were not enough, hornbook law on the nature of a joint venture would resolve the issue.

"The incidents of a joint venture and the mutual obligations of its members are so similar to those existing in a partnership that, in many respects, joint venturers' rights, duties, and liabilities are tested by rules closely analogous to and substantially the same as those which govern partnerships. Thus, the obligation of joint venturers may be equated with that of general partners, and the rules of law governing partnerships, if relevant, apply to a joint venture. However, the two relationships are not identical and there can be a joint venture without the existence of a legal partnership. A joint venture is a special combination of two or more persons in some specific venture where a profit is jointly sought without any actual partnership or corporate designation, while an indispensable requirement of a partnership is a mutual promise or understanding of the parties to submit to the burden of making good the losses as well as to share in the profits of the business, which relates to a general business of a particular kind.

"A joint venture has been likened to a limited partnership—not limited in a statutory sense as to liability, but as to scope and duration. Thus, one distinction between a joint venture and a partnership is that the former relates to a single transaction (thought it may be continued over several years), while the latter relates to a general business of a particular kind. Joint ventures are also distinguishable from partnerships in that the authority of one joint venturer to act as the agent of the others is more limited than the agency authority of a member of a partnership." 16 New York Juris-prudence 2d, Business Relationships, § 1578 at 254–255.

"A joint venture and corporate form of business are mutually exclusive, each being governed by a separate body of law, and a joint venture may not be carried on by individuals through a corporate form with the corporation presenting itself to the world as the responsible entity. When the corporate shield providing protection against personal liability, the parties cause to be joint venturers and have only the rights, duties, and obligations of stockholders. The parties to such an arrangement cannot be joint venturers inter se and a corporation as to the rest of the world. Corporations may, however, be parties to a joint venture agreement." 16 New York Jurisprudence 2d, Business Relationships, § 1580 at 256.

See also *Weisman v. Awnair Corporation*, 3 N.Y.2d 444, 449, 165 N.Y.S.2d 745, 749–50, 144 N.E.2d 415, 748–49 (1957); *Pedersen v. Manitowoo Company, Inc.*, 25 N.Y.2d 412, 419, 306 N.Y.S.2d 903, 255 N.E.2d 146 (1969); *Ross v. Willett*, 27 N.Y.S. 785 (1894); *John's, Inc. v. Island Garden Center of Nassau, Inc.*, 269 N.Y. S.2d 231, 235–36, 49 Misc.2d 1086 (1966).

▮ The undisputable language of the August 24, 1981 joint venture agreement and the legal principles affecting joint ventures compel the conclusion that Roxy is a partnership against which Natoma as a general partner could file an involuntary petition under Code § 303(b)(3)(A).[6] Twins' affirmative defenses or objections to the petition must be dismissed.

It is so ordered.

6. Twins has urged that the decision in *In re York Furniture Company*, 32 B.R. 211 (Bankr.S. D.N.Y.1983), makes it clear that an involuntary against a joint venture can be filed only by creditors. The *York* decision does not so hold. Firstly, the question was not in issue. Secondly, and more importantly, the debtor in *York* was not the joint venture; the debtor was one of the joint venturers. However, in light of Twins' assertion about the *York* decision, it would be well for the court to point that its decision that an involuntary petition could be filed against Roxy, a joint venture, by Natoma is a decision limited to the facts of this case. This court need not and should not decide whether all joint ventures, including those founded on conduct rather than a written agreement, are similarly susceptible.